Mitchell W. LYONS, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (PITTSBURGH
STEELERS SPORTS, INC.), Respon-
dent.

Commonwealth Court of Pennsylvania.

Argued May 8, 2002.
Decided July 24, 2002.

Jon Pushinsky, Pittsburgh, for petitioner.

Brian D. Walters, Pittsburgh, for respondent.

Before COLINS, President Judge, SMITH–RIBNER, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Mitchell W. Lyons appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) which granted Lyons' claim petition but limited his benefits in accordance with Section 308.1 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by Section 10 of the Act of July 2, 1993, P.L. 190, 77 P.S. § 565.

Lyons is a former professional football player for Pittsburgh Steelers Sports, Inc. (Steelers), which is a franchise of the National Football League (NFL). Lyons contends that Section 308.1 violates equal protection of the law by imposing an artificially low average weekly wage on certain professional athletes.

Before his injury, Lyons played professional football for the Steelers as a tight end and as a special teams player. He was assigned to the kick-off return team when he was injured. The Steelers were playing against the Kansas City Chiefs football team on December 19, 1999. The Kansas City team kicked the ball along the ground toward Lyons, who picked up the ball and began to run. Lyons had cut to the left and run through an opening in the opposing players, when a Kansas City player struck Lyons directly on the knee with his head. The blow dislocated Lyons' knee inward and ended his professional football career.

Lyons was diagnosed as having sustained a dislocated left knee, with tears of the posterior cruciate ligament, the anterior cruciate ligament, medial collateral ligament and possible damage to the meniscus with possible other damage to the interior. Lyons' knee was treated with total immobilization for approximately six weeks and afterward with various strengthening and flexibility rehabilitation techniques. As of the date of hearing before the WCJ, physical activity continued to cause Lyons' knee to swell. The knee has not regained its previous strength and flexibility, and it causes Lyons pain. As a professional football player, Lyons needed to be able to run, to make sudden stops, sharp turns, twists and quick starts and to be prepared to be tackled when handling the football. Because he can no longer do these things, Lyons cannot return to his career as a professional football player.

At the time of his injury, Lyons' actual weekly wage was $8,075.90, and he was paid that wage through February 9, 2000. Since October 31, 2000, Lyons has been gainfully employed by AXA Advisors, a financial planner in Grand Rapids Michigan, with a weekly income of $1,000. Due to the operation of Section 308.1 of the Act, Lyons' partial disability benefit rate is calculated based upon an average weekly wage of $1,176.00 (two times the Statewide average weekly wage of $588) rather than Lyons' actual average weekly wage of $8,075.90. The parties stipulated to the facts of Lyons' injury and that, under the Act, Lyons is entitled to partial disability benefits at the rate of $117.33 per week from November 1, 2000 to date and continuing. The $117.33 figure is calculated as two thirds of the difference between Lyons' weekly income of $1,000 and the average weekly wage of $1,176.00 imposed by Section 308.1.

Under the stipulation, Lyons reserved the right to challenge the constitutionality of Section 308.1. Lyons challenged the constitutionality of Section 308.1 before both the WCJ and the Board. Based upon the stipulation, the WCJ awarded Lyons partial disability benefits at the rate of $117.33 per week, and the Board affirmed the WCJ's decision. Both the WCJ and the Board declined to consider the constitutional claim on the grounds that they lacked jurisdiction to do so. The Court's review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether the necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

Section 308.1 of the Act limits the amount of partial disability benefits received by professional athletes who are employed by franchises of certain enumerated professional athletic organizations and whose average weekly wage is more than eight times the Statewide average weekly wage. When calculating such benefits, Section 308.1 imposes an artificial average weekly wage equal to two times the Statewide average weekly wage. The Section provides as follows:

**Compensation for professional athletes**

(a) The eligibility of professional athletes for compensation under this act shall be limited as provided in this section.

(b) The term "professional athlete," as used in this section, shall mean a natural person employed as a professional athlete by a franchise of the National Football League, the National Basketball Association, the National Hockey League, the National League of Professional Baseball Clubs or the American League of Professional Baseball Clubs, under a contract for hire or a collective bargaining agreement, whose wages as defined in section 309 are more than eight times the Statewide average weekly wage.

(c) In the case of a professional athlete, any compensation payable under this act with respect to partial disability shall be reduced by the after-tax amount of any:

(1) Wages payable by the employer during the period of disability under a contract for hire or collective bargaining agreement.

(2) Payments under a self-insurance, wage continuation, disability insurance or similar plan funded by the employer.

(3) Injury protection or other injury benefits payable by the employer under a contract for hire or collective bargaining agreement.

(d) No reduction shall be made pursuant to clause (c) against any compensation payable under this act which becomes due and payable on a date after the expiration or termination of the professional athlete's employment contract, except for any amounts paid by the employer pursuant to the contract.

(e) In the case of a professional athlete, the term "wages of the injured employe" as used in section 306(b) for the purpose of computing compensation for partial disability shall mean two times the Statewide average weekly wage.

Lyons contends that Section 308.1 violates his right to equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution and by Article 1, Section 26 of the Pennsylvania Constitution. The same standards apply when analyzing claims brought under the equal protection provisions of the Pennsylvania Constitution and claims brought under the equal protection provisions of the United States Constitution. *Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000). The essence of those standards is that the law should treat similarly situated people in similar ways, but the standard allows the legislature to treat people with different needs differently and to classify people for purposes of receiving treatment. *Id.*

The first step in an equal protection analysis is to determine which of three types of scrutiny the reviewing court should apply to the challenged classification: strict scrutiny, intermediate scrutiny or rational basis scrutiny. The Supreme Court has set forth these degrees of scrutiny as follows:

> The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

*Smith v. City of Philadelphia*, 512 Pa. 129, 138, 516 A.2d 306, 311 (1986) (citation omitted). Professional athletes are neither a suspect class nor a sensitive classification, and Section 308.1 implicates no fundamental or important right. The right at issue is purely economic, and therefore the rational basis scrutiny applies.[1] *See Berninger v. Workers' Compensation Appeal Board (East Hempfield Township)*, 761 A.2d 218 (Pa.Cmwlth.2000), *appeal denied*, 565 Pa. 650, 771 A.2d 1287 (2001) (applying rational basis scrutiny to hold that the heightened burden for proving a mental injury under the Act does not violate equal protection).

---

1. Lyons agrees in his brief that the appropriate test is rational basis. Nevertheless, *amicus curiae* National Football League Players Association argues that the Court should apply strict scrutiny. The *amicus curiae* further contends that Section 308.1 violates the constitutional guarantees of due process of law and also Article III, Section 18 of the Pennsylvania Constitution (relating to compensation laws allowed to the General Assembly). Because the parties did not raise those issues, they are waived. As the Supreme Court has explained: "An *amicus curiae* is not a party and cannot raise issues that have not been preserved by the parties." *Commonwealth v. Cotto*, 562 Pa. 32, 45 n6, 753 A.2d 217, 224 n6 (2000).

A classification satisfies rational basis scrutiny so long as the legislative distinction has some rational ground that relates to a legitimate state purpose. *Ligonier Tavern, Inc. v. Workmen's Compensation Appeal Board (Walker)*, 552 Pa. 237, 714 A.2d 1008 (1998). In conducting its analysis, "the reviewing court is free to hypothesize reasons that the legislature might have had for the classification;" the reviewing court cannot question the soundness or wisdom of the legislative distinction if "any state of facts reasonably can be conceived to sustain that classification." *Curtis v. Kline*, 542 Pa. 249, 255, 666 A.2d 265, 268 (1995). A law will not be found to violate equal protection under rational basis scrutiny simply because the classifications drawn by the legislature are imperfect or result in some inequality. *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Co.)*, 536 Pa. 380, 639 A.2d 776 (1994); *Guess v. Workmen's Compensation Appeal Board (Link Belt/FMC Corp.)*, 77 Pa.Cmwlth. 319, 466 A.2d 1098 (1983).

Lyons argues that he is being treated disparately because he receives less benefits than a worker earning the same wage in any other line of work. He contends that even among professional athletes the treatment is disparate because Section 308.1 targets only certain athletic organizations; for example, it does not apply to professional athletes who play soccer or to professional athletes who play football but are employed by a start-up league. Lyons further contends that there is no logical reason to distinguish between professional athletes who receive eight times the Statewide average weekly wage and those who receive less than that amount, and he suggests that the only purpose served by Section 308.1 is to confer an economic benefit upon the owners of the athletic organizations that the law targets.[2]

The District Court of Appeals of Florida considered a similar constitutional challenge to the Florida workers' compensation statute in *Rudolph v. Miami Dolphins, Ltd.*, 447 So.2d 284 (Fla.Dist.Ct. App.1983). The statute in question provided that the term employment did not include service performed by a professional athlete, such as a professional football player. Among other things, the claimants in that case argued that the exclusion was unconstitutional in violation of the equal protection clause of the Fourteenth Amendment and the corresponding equal protection guarantee in the state constitution. In upholding the constitutionality of the exclusion, the Florida court provided the following explanation for the basis of the classification:

> The professional athlete exclusion is not a wholly arbitrary one. Professional football players incur serious injuries on a regular, frequent, and repetitive basis. They are generally well paid, and as the NFL contracts in these cases exemplify, they willfully hold themselves out as well-skilled in the sport of their choice. They make a conscious decision to use their skills in an occupation involving a high risk of frequent, repetitive, and serious injury. We cannot say that the legislature's exclusion of this voluntary, though highly dangerous, activity from the worker[s'] compensation act fails to bear some reasonable relationship to a legitimate state purpose and is so completely arbitrary and lacking in equality of application to all persons similarly

**2.** The Steelers correctly note that Section 308.1 affects only professional athletes who have demonstrated an ability to secure post-injury wages with gainful employment. The Section has no effect on an athlete's right to receive total disability benefits or to receive medical treatment.

situated as to violate the cited constitutional provisions.

*Id.* at 291–292.

The explanation supplied by the Florida court offers a rational basis for treating professional athletes differently that equally supports Section 308.1. The Court agrees that professional athletes willfully hold themselves out to risk of frequent, repetitive and serious injury in exchange for lucrative compensation. While other occupations are also rewarded for facing risk, professional athletes employed in the major professional sports represent a distinctive blend of risk combined with lucrative compensation. It is also worth observing that professional athletes undergo this risk in order to provide entertainment. While the Court has great respect for professional athletes, the legislature could have rationally placed a different value on those who risk bodily harm to provide entertainment from those, such as police officers and fire fighters, who risk bodily harm to protect society.

■ Although these characteristics may apply equally to some other occupations, the fact that a classification is imperfect does not render it arbitrary. *McCusker.* Likewise, the legislature could rationally have concluded that professional athletes paid less than eight times the statewide average weekly wage have a greater need for partial disability benefits than athletes who receive greater compensation. The cut-off chosen by the legislature need not be mathematically perfect in order to withstand rational basis scrutiny. *Id.* For the foregoing reasons, the Court affirms the order of the Board.

Judge McGINLEY did not participate in the decision in this case.

***ORDER***

AND NOW, this 24th day of July, 2002, the order of the Workers' Compensation Appeal Board is affirmed.