**PITTSBURGH STEELERS SPORTS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WILLIAMS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 16, 2002.

Decided Oct. 23, 2002.

Publication Ordered Jan. 8, 2003.

---

J. Brendan O'Brien, Pittsburgh, for petitioner.

Susan Paczak and Sandra W. Kokal, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Pittsburgh Steelers, Inc. and the State Workers' Compensation Insurance Fund (collectively, Employer) petition for review from the March 27, 2002 order of the Workers' Compensation Appeal Board (Board) that affirmed, as modified, the decision of the Workers' Compensation Judge granting benefits to John L. Williams (Claimant). We affirm.

Claimant played professional football for Employer. On July 21, 1998, Claimant filed two claim petitions. In the first petition, Claimant alleged that on August 25, 1995, he aggravated a pre-existing arthritic condition of his right knee during a preseason game. The second petition alleged that, as of the January 31, 1996 Superbowl, Claimant suffered degenerative arthritis of the right knee resulting from or aggravated by the repetitive trauma of playing football.[1]

Claimant testified that he worked for Employer as a fullback for approximately one year. Previous to that, the Seattle Seahawks employed him for eight years. Claimant stated that on August 25, 1995, he injured his right knee when he dove for a pass and struck his knee on the turf. He immediately sought treatment from the team trainer, John Norwig.

As a result of his injury, Claimant's knee swelled with fluid. He was treated by James P. Bradley, M.D., the team physician. Dr. Bradley removed the fluid from Claimant's knee and injected a long-acting corticosteroid. On September 26, 1995, Dr. Bradley performed arthroscopic surgery on Claimant's knee. Throughout the season, Dr. Bradley continued to remove fluid from Claimant's knee and, every other week, provided a cortisone injection that enabled him to play. Prior to every game, Claimant received a Toradol shot to numb his knee. Although Claimant was unable to participate in team practices on a regular basis, he missed only one game of the regular season.

After the Superbowl, Claimant returned to Florida and received medical treatment for his knee from Doctor Peter Indelicato. Claimant acknowledged that he suffered a collateral ligament strain to his right knee in 1984 while playing college football. He further stated, however, that the 1984 surgery was less painful than the 1995 surgery and that the 1995 injury was primarily around his kneecap. Claimant also

---

1. The parties entered into the following stipulation of facts:

(a) [Claimant] was paid $67,000.00 in postseason salary on February 1, 1996. [Employer] is not entitled to a credit as these earnings represent his wages for the season that he earned prior to February, 1996.

(b) [Claimant] received $125,000.00 as an injury grievance payment. [Employer] is entitled to a credit for $125,000.00.

(c) [Claimant] was paid $80,000.00 in severance pay on September 29, 1997. [Employer] is not entitled to a credit for severance payments as his injury date was prior to the enactment of Act 57 [The Workers' Compensation Act (Act) of June 2, 1915, P.L. 736, as amended, by the Act of June 24, 1996, P.L. 350].

(d) Deferred compensation from the Seattle Seahawks in the amount of $600,000.00 were [sic] for services for a prior year. [Employer] is not entitled to a credit for salaries paid by another employer.

(e) [Claimant] received $19,110.00 in October of 1996 and $22,646.00 in October of 1997 under the White NFLPA Settlement Fund. [Employer] is not entitled to a credit as this amount was not paid by [it].

WCJ's Decision, p. 7–8.

acknowledged that he received $125,000.00 as a result of grievance arbitration after termination of his employment.

Dr. Indelicato, a board-certified orthopedic surgeon, testified that in September of 1995, he began treating Claimant for pain and swelling of the right knee.[2] Upon examination, the doctor noted that Claimant's knee had moderate to severe fluid build-up rendering Claimant unable to fully extend it. X-rays revealed mild degenerative arthritis of the medial joint compartment and patella femoral joint. There was also evidence of previous damage to Claimant's posterior cruciate ligament, which precedes degenerative arthritis. At that time, Dr. Indelicato aspirated the knee and injected anti-inflammatory medication.

Subsequent examinations continued to reveal repetitive episodes of swelling, degenerative pain and discomfort. Consequently, in July of 1996, Dr. Indelicato performed surgery on Claimant's knee, whereby he scraped the diseased cartilage down to the bone. Claimant progressed fairly well after the surgery and was able to exercise and train without serious after-affects. Dr. Indelicato opined that Claimant suffered from post-traumatic degenerative arthritis based on chronic posterior cruciate insufficiency of the knee joint caused by a torn posterior cruciate ligament and the continued play of football.

Claimant also presented the testimony of Dr. Bradley, the team physician. Dr. Bradley, also a board-certified orthopedic surgeon, treated Claimant immediately after the August 1995 preseason game. He diagnosed Claimant with posterior cruciate ligament tears and degenerative joint disease. Throughout September of 1995, Dr. Bradley noted continued swelling of the kneecap, which he treated with anti-inflammatory injections.

On September 26, 1995, Dr. Bradley performed arthroscopic surgery on Claimant. He found that Claimant suffered significant arthritis of the medial condyle of the patellofemoral joint. Although swelling continued at a lesser rate, Claimant was able to start exercising and participating in team practices as tolerated. The doctor continued to aspirate Claimant's knee as needed.

Dr. Bradley testified that he examined Claimant in 1994 prior to Employer's acquisition of him and found Claimant's knee to be functional. At that time, Claimant exhibited signs of collateral ligament laxity, posterior cruciate laxity, posterior lateral corner laxity, and degenerative joint disease. Dr. Bradley stated that the continued play of professional football accelerated Claimant's degenerative joint disease because of the continual torquing, twisting, stopping and starting of the body.

Both doctors agree that Claimant should not continue to play professional football.

In opposition to Claimant's petitions, Employer presented the testimony of Jack P. Failla, M.D. Based upon his examination of Claimant and review of the medical records, Dr. Failla opined that Claimant had completely recovered from the 1995 injury and that his degenerative joint disease was the result of his prior 1984 football injury. He acknowledged, however, that Claimant's work for Employer was a contributing factor to the current condition of his knee.

The WCJ found that Claimant sustained his burden of proving that he sustained injuries to his right knee on August 25,

---

2. Dr. Indelicato previously performed arthroscopic surgery on Claimant in 1984 for a medial collateral ligament tear. In 1985, the doctor treated Claimant for a shoulder problem.

1995 and on January 31, 1996; the latter consisting of degenerative arthritis that was developed or aggravated by the repetitive trauma of playing football for Employer.[3] The WCJ found the testimony of Doctors Indelicato and Bradley to be credible, in part, because both agreed that Claimant's job duties caused further damage to his right knee and accelerated his degenerative arthritic condition. Accordingly, the WCJ awarded Claimant total disability benefits for the period of January 31, 1996 through September 19, 1999 and partial disability benefits from September 19, 1999 and continuing forward.[4]

The parties filed cross-appeals to the Board. On appeal, the Board affirmed as modified.[5]

■ Employer first maintains that Claimant failed to give proper notice of his injury. Section 311 of the Act provides, in part, that

> [u]nless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, ... shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

77 P.S. § 631.

■ The WCJ found that Claimant informed John Norwig, the team trainer, of

his injury. Employer complains that Claimant failed to establish that Norwig was a supervisor or someone other than a co-employee. Whether a claimant has complied with the notice provisions of the Act is a question of fact for the WCJ. *City of Philadelphia v. Workers' Compensation Appeal Board (Wilson)*, 767 A.2d 26 (Pa. Cmwlth.2001).

We begin by noting that the employment contract between Claimant and Employer provides that "if Player is injured in the performance of his services under this contract and *promptly reports such injury to the Club physician or trainer,* then Player will receive such medical and hospital care during the term of this contract...." (R.R. 90) (Emphasis added.) Thus, under the terms of the employment contract, prompt notice to the trainer provides a player with assurance that his medical bills will be covered if he is injured during the performance of his duties. If notice to the trainer is sufficient to ensure medical benefits, it is logical that the same procedure would be sufficient to notify Employer that the injury occurred and that it was work-related. Additionally, by designating the trainer as a person to be notified of an injury, the contract elevates him to the status of Employer's representative and not just another co-employee.

Moreover, Claimant was treated immediately on the sidelines after leaving the field by the trainer and treated by Dr. Bradley within a week of his injury. Notice of an injury to the team's doctor is

---

**3.** Although the WCJ found that Claimant sustained an injury on August 25, 1995, he dismissed that claim petition on the ground that the disability from that injury was caused by years of playing football and was accelerated and aggravated during his last year of employment.

**4.** The WCJ reduced Claimant's total disability benefits to partial benefits because Claimant

obtained employment with Hastings Youth Academy on September 20, 1999.

**5.** On appeal, we are limited to determining whether constitutional rights were violated, an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Second Breath v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892 (Pa.Cmwlth.2002).

sufficient to satisfy the notice requirements of Section 311. *See generally Sheetz v. Workmen's Compensation Appeal Board (Firestone Tire & Rubber Co.),* 104 Pa.Cmwlth.411, 522 A.2d 146 (1987) (Section 311 clearly provides that no notice is necessary if the employer has actual knowledge of the occurrence of the injury); *Reed v. Glidden Co.,* 13 Pa.Cmwlth. 343, 318 A.2d 376 (1974). Accordingly, the WCJ did not err in concluding that Claimant promptly notified Employer of his injury.

■ Employer further complains that the WCJ's determination is not supported by substantial evidence and that Claimant failed to demonstrate that his disability continued throughout the proceedings. In a claim petition, the claimant bears the burden of proving all the necessary elements to support an award, including the burden to establish the duration of the disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993).

■ In his claim petition, Claimant alleged that the repetitive trauma of playing professional football either caused or aggravated the degenerative arthritis of his right knee. It is well settled that for an injury to be compensable under the Act, it is not required that the injury resulted from any sudden occurrence or accident; it may be due to daily trauma or aggravation of a preexisting condition. *General Elec. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth.461, 593 A.2d 921 (1991). In order to demonstrate that an aggravation has occurred, the claimant must demonstrate that the intervening incident materially contributed to the disability. *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls),* 728 A.2d 385 (Pa.Cmwlth.1999). Whether or not the intervening incident materially

contributed to the disability is a question of fact for the WCJ. *Id.*

When asked whether Claimant's employment with Employer had an effect on his preexisting condition, Dr. Bradley responded:

Of course. The forces that are required to play professional football on a knee, ... are astronomic. The cutting, the hitting, the pounding that they take ... the natural history is to slowly get worse, especially the arthritis of the medial compartment and the patellofemoral joint.... It's just the rate at which it happens is a little more accelerated in something like a sport that requires tremendous torquing, twisting, stopping, starting types of activities.

(R.R. 55–55a) Dr. Bradley further acknowledged that the force with which the game is played accelerated the degenerative process. (*Id.*)

Similarly, Dr. Indelicato testified that Claimant's employment with Employer had a negative effect on Claimant's knee because of the continuous training and pounding. (R.R. 13) Although Dr. Indelicato did not believe that Claimant's employment was a substantial contributing factor with regard to the condition of Claimant's posterior cruciate ligament, he did opine that the employment was a substantial contributing factor in the condition of the surface of Claimant's knee joint. (R.R. 14)

Based on this testimony, the WCJ concluded that Claimant's degenerative arthritis of the knee was caused or aggravated by his employment with Employer. The WCJ accepted both doctors' testimony as credible. Credibility determinations are within the exclusive province of the fact finder. *Lehigh County Vo–Tech Sch. v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995).

Employer next complains that Claimant failed to demonstrate that his disability continued throughout the pendency of the proceedings. It relies on a statement made by Dr. Indelicato, wherein he stated that he could not opine whether Claimant's knee returned to its pre-injury condition as of his February 1997 examination. Employer's contention, however, completely ignores the credited testimony that Claimant should never play professional football again because of the condition of his knee.

Both doctors testified that if Claimant were to resume that type of employment, the entire process would repeat itself. Indeed, Dr. Indelicato testified that if Claimant resumed play, the repetitive trauma to his knee and the normal aging process would improve the likelihood that total knee replacement surgery would be necessary. Thus, the record is sufficient to conclude that the aggravation of Claimant's degenerative joint disease and the repetitive trauma to his knee disabled him from resuming his career as a professional football player.

Finally, Employer argues that the Board erred in reversing the WCJ's finding that it was entitled to a $125,000.00 injury grievance credit against workers' compensation benefits paid during the periods of total and partial disability. Specifically, the Board determined that the WCJ erred in allowing a credit against *total* disability payments made by Employer, as opposed to a credit against partial disability payments only. It therefore modified the WCJ's order to provide that the $125,000.00 injury grievance payment credit began on September 20, 1999, the date that Claimant was deemed partially disabled.

**6.** Added by Section 10 of the Act of July 2, 1993, P.L. 190, commonly referred to as Act

Section 308.1(c)(3) of the Act [6] provides that in the case of professional athletes, any compensation paid under the Act with respect to *partial disability* shall be reduced by the *after-tax* amount of any "injury protection or other injury benefits payable by the employer under a contract for hire or collective bargaining agreement." (Emphasis added.) Section 308.1 affects only professional athletes who have demonstrated an ability to secure post-injury wages; it has no effect on an athlete's right to receive total disability benefits or medical treatment. *Lyons v. Workers' Compensation Appeal Board (Pittsburgh Steelers Sports, Inc.)*, 803 A.2d 857 (Pa.Cmwlth.2002).

Employer's argument is two-fold: that Section 308.1(c) is silent as to a credit against total disability payments and that the credit should be given dollar for dollar, not after tax. Because Section 308.1(c) does not address total disability payments, Employer relies on cases decided before Act 44 to conclude that a dollar for dollar pre-tax credit should be given against all disability payments made.

Employer cites *Wallace v. Workers' Compensation Appeal Board (Pittsburgh Steelers)*, 722 A.2d 1168 (Pa.Cmwlth.1999) and *Pittsburgh Steelers Sports, Inc. v. Workmen's Compensation Appeal Board (Erenberg)*, 145 Pa.Cmwlth.547, 604 A.2d 319 (1992) in support of its position. In both cases, we determined that an employer was entitled to a dollar for dollar credit for injury protection benefits paid to a professional athlete where the terms of the collective bargaining agreement provided that said benefits were in lieu of compensation and were not wages. In both cases, however, the injuries complained of occurred prior to Act 44 and thus, Section

44, *as amended*, 77 P.S. § 565(c)(3).

308.1 was not applicable. Because there was no statutory law addressing such a credit, we looked to the parties' agreements when determining whether a dollar for dollar credit was due against workers' compensation benefits.

■ However, Claimant's injury occurred after the enactment of Act 44. Therefore, its provision relating to the compensation of professional athletes is controlling. The law in effect at the time of injury determines the method of calculating benefits, and by extension, the calculation of any credits against those benefits. *See Giant Eagle, Inc./OK Grocery v. Workers' Compensation Appeal Board (Weigand),* 764 A.2d 663 (Pa.Cmwlth. 2000), *appeal denied,* 566 Pa. 651, 781 A.2d 149 (2001).

■ Employer further suggests that since there is nothing in Section 308.1 or the Act generally that prohibits this Court from concluding that it is entitled to a credit against total disability payments, we may enforce the terms of the employment contract. While the Act does not address credits against total disability payments in the case of professional athletes, we find only one flaw in Employer's argument: the courts have consistently held that where certain things are specifically designated in a statute, all omissions should be understood as exclusions. *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983).

By its exclusion, the General Assembly has therefore determined that a credit against total disability benefits is not al-

lowed where the injured professional athlete has received funds from various sources.[7] If we were to accept Employer's argument, we would be effectively inserting words into the statute that the legislature has chosen to exclude. However, "it is a canon of statutory construction that a court has no power to insert a word into a statute if the legislature has failed to supply it." *Garcia v. Community Legal Servs. Corp.,* 362 Pa.Super. 484, 524 A.2d 980, 984 (1987).[8]

Accordingly, we affirm.

Judge McGINLEY did not participate in the decision of this case.

### ORDER

AND NOW, this 23rd day of October, 2002, the March 27, 2002 order of the Workers' Compensation Appeal Board is AFFIRMED.

---

7. *See generally Lyons* (because professional athletes do not constitute a suspect class, the legislature need only a rational basis to conclude that they could be treated differently from others in terms of workers' compensation because they willfully risked injury for lucrative compensation).

8. For this same reason, we cannot conclude that the Board erred in determining that Employer was entitled to a credit based only on the after-tax funds received by Claimant.