**ABBOTT AMBULANCE, Appellant,**

v.

**ST. CHARLES COUNTY AMBULANCE DISTRICT, Respondent.**

**No. ED 86546.**

Missouri Court of Appeals, Eastern District, Division Four.

April 11, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 25, 2006.

Application for Transfer Denied June 30, 2006.

---

1. All statutory references are to RSMo. (2000), unless otherwise indicated.

Winthrop B. Reed, III, St. Louis, MO, for appellant.

Brian E. McGovern, Chesterfield, MO, for respondent.

NANNETTE A. BAKER, Presiding Judge.

Abbott Ambulance ("Abbott") appeals from a Motion for Summary Judgment the trial court granted to St. Charles County Ambulance District ("SCCAD").

In its sole point on appeal, Abbott claims the trial court erred in granting summary judgment in favor of SCCAD and in declaring Ordinance 00–01 valid and enforceable because SCCAD did not have the authority to promulgate Ordinance 00–01. We find no error and affirm.

### Factual Background and Proceedings Below

SCCAD was created pursuant to Chapter 190 of the Missouri Revised Statutes entitled "Emergency Services," which grants various powers to ambulance districts. SCCAD is a political subdivision of the State of Missouri governed by the Missouri Department of Health and Senior Services. SCCAD's territory includes all of St. Charles County, except the territory within the city limits of the City of St. Charles.

On October 25, 2000, SCCAD enacted Ordinance 00–01. Ordinance 00–01 was enacted "to ensure the public health and welfare of the residents of St. Charles County by establishing the requirements and standards for ambulance service within the area served by St. Charles County Ambulance District." Ordinance 00–01 sets forth a comprehensive scheme purporting to regulate all ambulance services provided in SCCAD. Further, Ordinance 00–01 requires that all ambulance service providers who operate within SCCAD's territory must comply with SCCAD's licensure requirements. Section 2 of Ordinance 00–01 provides the following:

(A) No person, directly or indirectly, shall furnish, operate, conduct, maintain, advertise, or otherwise be engaged in or

profess to be engaged in the business of providing ambulance services upon the streets, alleys, or any public way or place of St. Charles County, Missouri *unless such person holds a currently valid license for an ambulance from the Missouri Department of Health and a license issued pursuant to the provisions of this ordinance.* (Emphasis added).

(B) No ground ambulance shall be operated for ambulance purposes and no individual shall drive, attend or permit it to be operated for such purposes on the streets, alleys or any public way or place of St. Charles County, Missouri unless the ground ambulance is under the immediate supervision and direction of a person who is holding a currently valid license as an EMT–P from the Missouri Department of Health and a license issued pursuant to the provisions of this ordinance. All calls for ambulance services shall be dispatched through a central dispatching agency.

As written, Section 2(A) of Ordinance 00–01 precludes any ambulance service provider, such as Abbott, from providing ambulance service unless it holds a currently valid license from the Missouri Department of Health and a license issued pursuant to the ordinance's provisions.

To obtain a license, an ambulance service provider must submit an extensive application and a non-refundable license application fee to SCCAD. Then, the provider must submit to SCCAD's inspection of all its vehicles, equipment and premises. Under section 3(A)(3)(c) of Ordinance 00–01, SCCAD will issue a license after finding:

(1) that the proposed ambulance service will benefit the public health and welfare;

(2) that each ambulance, its required equipment and the premises designated in the application conform to regulations promulgated by [the SCCAD Board] as provided in the ordinance;

(3) that the applicant is a responsible person who bears a good reputation for honest, integrity, fair dealing, and is competent to operate an ambulance service;

(4) that the applicant's ambulances will be operated only by duly licensed EMT–P's; and

(5) that all the requirements of this ordinance and all other applicable laws and ordinances have been met.

Under Ordinance 00–01, ambulance service providers must also comply with SCCAD's record and reporting requirements and SCCAD's various requirements relating to the vehicles used by the provider, the level of patient care provided, and the insurance maintained by the provider. Further, only licensed personnel may drive and attend to any ambulances operated by a licensed ambulance service provider within SCCAD. To obtain such a license, ambulance service personnel must submit a detailed application and meet the requirements SCCAD imposed for such licensing.

Abbott is a licensed ambulance service provider authorized to provide services in its state-authorized Ambulance Service Area, which is the following:

Entire St. Louis City and St. Louis County; in St. Charles County, the area south of Highway 94/370 from the Missouri River running in a southernly direction to Highway 40; in Jefferson County the area north and east of a line running in an east/west and northernly direction from the Mississippi River along highways "M," "MM," and "W" to the Jefferson/St. Louis County line; in Franklin County all of the area within the City limits of Pacific, Missouri.

Since part of Abbott's state-authorized Ambulance Service Area is in St. Charles County, part of it falls within SCCAD's territory.

Abbott attempted to provide ambulance services throughout its entire state-authorized Ambulance Service Area, which includes a part of territory located within SCCAD without abiding by SCCAD's licensing requirements. Abbott claimed that Section 190.060, the enabling statute for ambulance districts, did not expressly grant ambulance districts the authority to fashion ordinances to regulate "all" ambulance service providers within SCCAD. SCCAD enforced Ordinance 00–01 against Abbott, requiring Abbott to abide by its licensing requirements.

On October 1, 2003, Abbott filed a Petition for Declaratory Judgment and Damages against SCCAD claiming that SCCAD exceeded its statutory authority by promulgating Ordinance 00–01. On February 14, 2005, Abbott filed its Motion for Summary Judgment on Claim for Declaratory Relief and on March 15, 2005, SCCAD filed its Cross–Motion for Summary Judgment on Plaintiff's Claim for Declaratory Relief.

On June 1, 2005, the trial court granted summary judgment in favor of SCCAD, ruling that Ordinance 00–01 was valid and enforceable as a matter of law. The trial court reasoned that (1) Section 190.105.5 authorizes such an ordinance and courts have recognized the validity of the statute; and (2) *Gold Cross Ambulance v. City of Kansas City,* stands for the proposition that local governmental bodies, such as ambulance districts, have the statutory authority to regulate ambulance providers within their district. 538 F.Supp. 956 (W.D.Mo.1982), *aff'd,* 705 F.2d 1005 (8th Cir.1983), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). We agree.

## Standard of Review

Appellate review of an award of summary judgment is essentially *de novo.* See *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

When considering appeals from a grant of summary judgment, we review the record in light most favorable to the party against whom judgment was entered. *Id.* Summary judgment will be upheld on appeal only if we determine that the movant is entitled to judgment as a matter of law and there are no genuine issues of material fact. *Id.* at 377. The material facts in this case are not substantially in dispute and thus, this case presents only a question of law. *Gillespie v. Estate of McPherson,* 159 S.W.3d 466, 470 (Mo.App. E.D.2005).

## Discussion

In its sole point on appeal, Abbott claims that the trial court erred in granting summary judgment in favor of SCCAD and in declaring Ordinance 00–01 valid and enforceable because SCCAD did not have the authority to promulgate Ordinance 00–01. According to Abbott, by attempting to regulate *all* ambulance service providers within SCCAD under Ordinance 00–01, SCCAD exceeded its statutory authority. We find no error and affirm.

■ A municipality derives its governmental powers from the state and exercises generally only such governmental functions as are expressly or impliedly granted it by the state. *City of Dellwood v. Twyford,* 912 S.W.2d 58, 59 (Mo. banc 1995) (quoting *Century 21 v. City of Jennings,* 700 S.W.2d 809, 811 (Mo. banc 1985)). A municipal ordinance that conflicts with the general law of the state is void. *Id.* In determining whether a municipal ordinance conflicts with a state statute, the test is whether the ordinance permits that which the statute forbids and prohibits, and vice-versa. *Id.*

■■ An ordinance that merely enlarges on the provision of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirements for all to its own prescriptions. *Miller v. City of Manchester,* 834 S.W.2d 904, 907 (Mo.App. E.D. 1992). Rules duly promulgated pursuant to properly delegated authority have the same force and effect of law. *Id.* Conflicts between ordinances and such regulations, therefore, are determined by the same principles that govern conflicts between ordinances and statutes. *Id.*

Statutory construction is a question of law. *Vogt v. Emmons,* 158 S.W.3d 243, 249 (Mo.App. E.D.2005). When construing a statute, we attempt to ascertain the intent of the lawmakers by giving the words in the statute their plain and ordinary meaning. *Id.* It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 252 (Mo. banc 2003). Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute. *Id.* Courts are not authorized to read into a statute a legislative intent that is contrary to the intent made evident by the plain and ordinary meaning of the language in the statute. *Vogt,* 158 S.W.3d at 249. When construing a particular portion of a statute, we are to consider related clauses. *Id.*

■ Under Section 190.010.2,[1] "When an ambulance district is organized it shall be a body corporate and a political subdivision of the state and shall be known as '_____ Ambulance District,' and in that name may sue and be sued, levy and collect taxes within the limitations of sections 190.001 to 190.090 and the constitution and issue bonds as provided in sections 190.001 to 190.090."

The state grants ambulance districts certain powers under Section 190.060. Section 190.060 provides, in pertinent part:

1. An ambulance district shall have and exercise the following governmental powers, and all other powers incidental, necessary, convenient or desirable to carry out and effectuate the express powers:

(1) To establish and maintain an ambulance service within its corporate limits, and to acquire for, develop, expand, extend and improve such service;

\* \* \*

(3) To operate, maintain and manage the ambulance service, and to make and enter into contracts for the use, operation or management of and to provide rules and regulations for the operation, management or use of the ambulance service;

\* \* \*

(7) To maintain the ambulance service for the benefit of the inhabitants of the area comprising the district regardless of race, creed or color, and to *adopt such*

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

*reasonable rules and regulations as may be necessary to render the highest quality of emergency medical care;* to exclude from the use of the ambulance service all persons who willfully disregard any of the rules and regulations so established; to extend the privileges and use of the ambulance service to persons residing outside the area of the district upon such terms and conditions as the board of directors prescribes by its rules and regulations; (emphasis added)

\* \* \*

2. The use of *any ambulance service of a district* shall be subject to the *reasonable regulation and control of the district* and upon such reasonable terms and conditions as shall be established by its board of directors. (Emphasis added).

3. A *regulatory ordinance* of a district adopted pursuant to any provision of this section may provide for a suspension or revocation of any rights or privileges within the control of the district for a violation of any regulatory ordinance. (Emphasis added).

Together, Sections 190.060.1(7), 190.060.2, and 190.060.3 provided SCCAD with the statutory authority to promulgate Ordinance 00–01. Section 190.060.1(7), as written, provides SCCAD with the statutory authority to promulgate "reasonable rules and regulations as may be necessary to render the highest quality of emergency medical care." The use of the word *"any"* in Section 190.060.2 also suggests that an ambulance district may have more than one ambulance service provider. Furthermore, Section 190.060.3 gives ambulance districts the general power to adopt regulatory ordinances like Ordinance 00–01.

Instead of discussing those subsections, Abbott focuses on the use of "an" and "the" in Section 190.060.1 when referring to ambulance services. Abbott argues that

the use of "an" and "the" limits SCCAD to regulate only itself and not other ambulance service providers such as Abbott, and that the Missouri legislature intended only to allow ambulance districts to "establish, maintain and regulate a single ambulance service." Meanwhile, SCCAD argues that "the" and "an" merely indicate a generic class.

However, the terms "an" and "the" in Section 190.060.1 do not necessarily refer to a single, specific ambulance service, as Abbott argues. "An" is "[a] form of *a* " that is "[u]sed before nouns and noun phrases that denote a single, but unspecified, person or thing <a mountain> <a woman>." WEBSTER'S II NEW RIVERSIDE DICTIONARY 25, 1 (1996). However, "the" may be "[u]sed as a determiner before nouns and noun phrases designating particular persons or things" *or* "[u]sed before a singular noun to make it general." *Id.* at 697. Therefore, as "an" and "the" are used before "ambulance service," the legislature may simply be referring to a generic ambulance service, not a single specific ambulance service. Since we find this argument unpersuasive for either Abbott or SCCAD, we must further examine Section 190.060, related clauses and case law.

The phrase "ambulance district" is distinct from the phrase "ambulance service" in Section 190.060.1. The legislature used the term "ambulance district" when it intended for a provision to apply to a distinct ambulance district as opposed to an "ambulance service" operating within the district. In subsections (8)-(10) of Section 190.060.1, the legislature expressly used the term "district," not "service":

(8) To provide for health, accident, disability and pension benefits for the salaried members of its organized *ambulance district* and such other benefits for the members' spouses and minor chil-

dren, through either, or both, a contributory or noncontributory plan. The type and amount of such benefits shall be determined by the board of directors of the *ambulance district* within the level of available revenue of the pension program and other available revenue of the *district* . . .

(9) To purchase insurance indemnifying the *district* and its employees, officers, volunteers and directors against liability in rendering services incidental to the furnishing of ambulance services . . .; and

(10) To provide for life insurance, accident, sickness, health, disability, annuity, length of service, pension, retirement and other employee-type fringe benefits, subject to the provisions of [Section 70.615] for the volunteer members of any organized *ambulance district* and such other benefits for their spouses and eligible unemancipated children, either through a contributory or noncontributory plan, or both . . . .

(Emphasis added).

If "ambulance service" referred solely to SCCAD's ambulance service, as Abbott claims, then it would have been superfluous for the legislature to use the phrase "ambulance district" or "district" in subsection (8)-(10). The legislature could have expressly referred to the "district's ambulance service." By using the different terms, the legislature did not intend for "ambulance service" to refer solely to SCCAD's ambulance services. "Ambulance service" not only refers to SCCAD's, but also to other ambulance service providers. When the legislature uses different terms in the same statute the different terms are presumed to have a different meaning and effect. *Armco Steel,* 883 S.W.2d 3 at 7. The term "an ambulance service" must generically refer to ambulance service providers within an ambu-

lance district, not just the district's ambulance service. Therefore, the language of Section 190.060 reflects that the legislature contemplated that more than one ambulance service provider could exist within an ambulance district.

Furthermore, Section 190.105.5 together with Section 190.105.13 provided SCCAD statutory authority to promulgate Ordinance 00-01. Section 190.105.5 provides the following:

*Sections 190.001 to 190.245* [The Comprehensive Emergency Medical Services Systems Act] shall not preclude the adoption of any law, *ordinance* or regulation not in conflict with such sections by any city not within a county, or at least as strict as such [Act] by any county, municipality or *political subdivision* except that no such regulations or ordinances shall be adopted by a political subdivision in a county with a population of over nine hundred thousand inhabitants except by the county's governing body. (Emphasis added).

Several cases recognize the validity of Section 190.105.5. In *City of Raytown v. Danforth,* the court recognized the ability of local governments to regulate ambulance providers. 560 S.W.2d 846, 849 (Mo. banc 1977). The court in *Gold Cross Ambulance v. City of Kansas City* ("*Gold Cross I*") held that Chapter 190 of the Missouri Revised Statutes, generally, and Section 190.105.5, specifically, permit municipalities to impose their own restrictions on an ambulance service in addition to those imposed by the state so long as those restrictions do not conflict with state law. 538 F.Supp. 956, 964 (W.D.Mo.1982).

Abbott claims that Section 190.105.5 "does not address whether SCCAD otherwise has the statutory authority to promulgate the particular ordinance in question" and that enacting an ordinance pursuant to Section 190.105.5 is only permissible "if the

ambulance district otherwise has the statutory authority to so regulate." The plain language of Section 190.105.13, which was added in 1998, however, states that Section 190.105.5 was "*intended to ... supersede the powers given to ambulance districts pursuant to this chapter.*" (Emphasis added). Therefore, by enacting 190.105.13, the legislature expressly acknowledged that Section 190.105.5 supersedes the powers given to ambulance districts by Section 190.060. Since Section 190.105.5 states "Sections 190.001 to 190.245 ... shall not preclude the adoption of any law, ordinance or regulation not in conflict with such sections," the legislature provided SCCAD with the authority to enact Ordinance 00-01.

Abbott further contends that if the legislature intended to grant ambulance districts the power to regulate "all" ambulance service providers, it would have granted that explicit power, as it has done in other instances. To support its argument, Abbott cites Section 190.105.6,[2] which allows counties with a population of more than 900,000 inhabitants to regulate "all" ambulance services within the county.[3] Abbott argues that the express provision in Section 190.105.6 regarding the authority to regulate "all" ambulance services in counties with a population in excess of 900,000 inhabitants clearly shows the legislature recognized the difference between "an" ambulance service[4] and "all" ambulance services.[5] Abbott claims that if the legislature intended ambulance districts to have the general power to regulate "all" ambulance service providers within their boundaries it would have specifically conferred those powers on ambulance districts as it did under Section 190.105.6.

Abbott's argument is unpersuasive because its reasoning runs counter to the public policy reasoning for local regulation of ambulance services by ambulance districts. In *City of Raytown*, the Missouri Supreme Court declared that "the qualitative improvement of ambulance service ... toward control of destructive competition" was the "major purpose" and "thrust" of the ambulance licensing law. 560 S.W.2d at 849.

In *Gold Cross I*, when Kansas City officials became concerned about the quality of the city's ambulance service, Kansas City developed the "public utility model" for ambulance service in which numerous competing ambulance companies were replaced by a single-company system. 538 F.Supp. at 960. The public utility model is designed to eliminate the incentive created by free-market delivery of ambulance service by private companies to neglect emergency ambulance service in favor of the more profitable non-emergency business.[6]

2. Section 190.105.6 reads as follows:

In a county with a population of over nine hundred thousand inhabitants, the governing body of the county shall set the standards for all ambulance services which shall comply with subsection 5 of this section. All such ambulance services must be licensed by the department. The governing body of such county shall not prohibit a licensed ambulance service from operating in the county, as long as the ambulance service meets county standards.

3. St. Charles County does not have more than 900,000 inhabitants.

4. *See* Section 190.060.1.

5. *See* Section 190.105.6.

6. The district court explained that the incentive to neglect emergency service arises from the cost structure of the ambulance business:

The fixed cost of providing emergency service is very high because expensive advanced life support equipment is required and because sufficient capacity to meet peak demand within an adequate response time must be maintained, even though that full emergency capacity is seldom utilized. In contrast, the cost of handling nonemer-

*Id.* Kansas City's ordinance applied to ambulance service providers other than itself. *Gold Cross Ambulance and Transfer v. City of Kansas City ("Gold Cross II")*, 705 F.2d 1005, 1009 (8th Cir.1983). Gold Cross and Transfer, competing ambulance companies who were precluded from operating within Kansas City by the public-utility model, brought a lawsuit against the city. *Id.* at 1008. The district court granted summary judgment in favor of Kansas City, concluding that the actions of the city to impose its own restrictions on ambulance service in addition to those imposed by the state were authorized by statute. *Id.* at 1012. The Eighth Circuit affirmed the district court's grant of summary judgment. *Id.* The Eighth Circuit noted that Chapter 190 "permits municipalities to impose their own restrictions on ambulance service in addition to those imposed by the state." *Id.*

Although *Gold Cross I* and *Gold Cross II* did not involve a political subdivision, such as SCCAD, the plain language of Sections 190.105.5 and 190.105.13 suggests that "any county, municipality or political subdivision" has the ability to enact an ordinance that applies to ambulance service providers other than itself. Section 190.105.5 specifically states, "Sections 190.001 to 190.245 shall not preclude the adoption of any law, ordinance or regulation not in conflict with such sections by any city not within a county, or at least as strict as such sections by *any county, municipality or political subdivision* ...*" (Emphasis added). Section 190.105.13 states, "No provision of this section, other than subsections 5, 6, 10, and 11 of this section, is intended to limit or supersede

the powers given to *ambulance districts* ...*" (Emphasis added). Together, Sections 190.105.5 and 190.105.13 suggest that SCCAD could enact Ordinance 00–01.

Finally, when the legislature amends a statute, a court must presume that it acted with knowledge of prior judicial construction of the statute. *Harding v. Lohman,* 27 S.W.3d 820, 824 (Mo.App. W.D.2000). The legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. *Id.* Therefore, we must presume that the Missouri legislature had knowledge of the *Gold Cross I* and *Gold Cross II* holdings when it added Section 190.105.13 in 1998 to clarify that Section 190.105.5 "supersede[s] the power given to ambulance district pursuant to [Chapter 190]." Since 190.105.5 allows political subdivisions to adopt ordinances, the legislature provided SCCAD with the statutory authority to promulgate Ordinance 00–01.

### Conclusion

Section 190.060, related clauses and case law make clear that the legislature provided SCCAD with the statutory authority to promulgate Ordinance 00–01. Accordingly, the trial court did not err in granting summary judgment in favor of SCCAD and in declaring Ordinance 00–01 valid and enforceable. For the reasons discussed above, we find no error and affirm.

SHERRI B. SULLIVAN, J., and ROY L. RICHTER, J., concur.

---

gency ambulance service with the idle excess capacity is low. Moreover, the fee-collection rate for nonemergency service is substantially higher than for emergency service. Thus, nonemergency calls are significantly more profitable than emergency

calls, and private ambulance companies operating in an unregulated market have a strong incentive to concentrate on providing nonemergency service rather than quick, high quality emergency care. *Id.*