Steven DUBINSKY,
Employee/Appellant,

v.

ST. LOUIS BLUES HOCKEY CLUB,
Employer/Respondent.

No. ED 88767.

Missouri Court of Appeals,
Eastern District,
Division One.

May 1, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 2007.

Application for Transfer Denied Aug. 21, 2007.

**128**

Bryan E. Round, Kansas City, MO, for appellant.

John P. Kafoury, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Steven Dubinsky ("Employee") appeals from the order of the Labor and Industrial Relations Commission ("Commission") that awarded him $13,604.80 in compensation for his permanent partial disability and

gave the St. Louis Blues Hockey Club ("Employer") a credit in that same amount pursuant to section 287.270 RSMo 2000.[1] Finding no error, we affirm.

The facts are as follows. Employee sustained an accidental injury on or about January 28, 2003, during a professional hockey game, arising out of and in the course of his employment with Employer. Employer received proper notice of the injury, and Employee timely filed a claim. At the time of the injury, Employee's average weekly salary was $17,500. Employer provided Employee with $10,635 in medical benefits. Employee remained under his employment contract with Employer, and Employer continued to pay Employee after the January 28, 2003, injury. Employee's contract with Employer expired in December 2003. Employee thereafter no longer played as a professional hockey player, but did become employed as a hockey instructor.

Several issues were presented to the administrative law judge ("ALJ") for determination: the extent of Employee's disability; Employer's request for credits for benefits under section 287.270; the constitutionality of section 287.270; and Employer's request for attorney's fees. Employee testified at the hearing. Medical records of Employee were introduced into evidence, as well as other documents. Employer introduced Employee's contract into the record, as well as documentation of wages and medical benefits that Employer paid, and an additional medical report on Employee. Employer's lawyer testified regarding attorney's fees in the matter.

The ALJ found that Employee suffered a ten percent permanent partial disability of the body from the January 28, 2003 injury, and awarded him $13,604.80 in benefits. The ALJ also found that Employer

1. Unless noted otherwise, all statutory citations are to RSMo 2000.

was entitled to a credit in that same amount pursuant to section 287.270 based on his status as a professional athlete under contract to Employer at the time of the injury. The ALJ concluded that:

This specific Missouri statute [section 287.270] intentionally creates a credit on the employer's behalf for those wages paid out to a claimant who is a professional athlete pursuant to their employment contract after the injury. The credit is used to offset all benefits related to compensation the employee would otherwise be entitled to receive under the Workers' Compensation Act. Thus so long as a professional athlete claimant's post injury wages exceed the benefits the athlete would otherwise receive (following the work injury), the athlete/claimant is not entitled to additional Worker's Compensation benefits . . . .

Claimant was a professional hockey player who was under contract with the St. Louis Blues at the time of this injury. Claimant continued to receive wages in the amount of $241,442.83 pursuant to his employment contract after the date of the accident. These payments are the funds that create the "credit" described under the statute against which Claimant's workers' compensation benefits will be assessed. The wages paid by Employer after the injury "pursuant to the provisions of the contract" more than take into account Claimant's right to benefits for medical expenses, temporary total disability, and permanent partial disability. Therefore pursuant to section 287.270 RSMo (1998), Employer is not liable for the payment of any additional benefits related to Claimant's injury. The player contract is very specific in that if Claimant is injured, Employer shall pay his medical expenses and Employe[e] shall be entitled to receive his remaining salary in accordance with the contract and the remaining state or term of the contract.

The ALJ also found that Employee's constitutional claim was without merit, but not that it was brought without a reasonable ground, and accordingly did not award Employer its attorney's fees. The Commission unanimously affirmed and adopted the opinion of the ALJ. Employee now appeals.

■■■ On appeal, absent fraud, the findings of fact made by the Commission shall be conclusive and binding. Section 287.495.1; *DeLong v. Hampton Envelope Co.*, 149 S.W.3d 549, 553 (Mo.App.2004). This Court reviews the Commission's award of workers' compensation benefits only on questions of law, and may modify, reverse, remand for rehearing, or set aside an award only if: 1) the Commission acted in excess of or without its powers; 2) the award was obtained by fraud; 3) the facts found by the Commission do not support the award; or 4) the record does not contain sufficient competent evidence to justify the making of the award. Section 287.495.1; *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003); *Delong*, 149 S.W.3d at 553–54. Where the Commission affirms and adopts the findings of the ALJ, we review the ALJ's findings as adopted by the Commission. *Reidelberger v. Hussman Refrigerator Co.*, 135 S.W.3d 431, 433 n. 2 (Mo.App. 2004).

■ We will address Employee's first and second points relied on together. In his first point relied on, Employee contends that the Commission erred in finding that Employer was entitled to a credit for wages paid when he continued to perform under the terms of the contract for its entire period. In his second point relied on, Employee asserts that the Commission erred in finding that Employer was enti-

tled to a credit against a permanent partial disability award for wages paid after the date of the injury pursuant to section 287.270.

Section 287.270, titled **"Benefits from other sources no bar to compensation, exception, professional athletes[,]"** provides that:

No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder; except as provided in subsection 3 of section 287.170, **and employers of professional athletes under contract shall be entitled to full credit for wages or benefits paid to the employee after the injury including medical, surgical or hospital benefits paid to the employee** or his dependents on account of the injury, disability, or death, **pursuant to the provisions of the contract.**

(Emphasis added).

 Statutory construction is a matter of law. *City of St. Joseph v. Village of Country Club,* 163 S.W.3d 905, 907 (Mo. banc 2005). The primary rule of statutory construction is to determine the intent of the legislature from the language used by considering the plain and ordinary meaning of the words used in the statute. *Maxwell v. Daviess County,* 190 S.W.3d 606, 610 (Mo.App.2006). Where the language of a statute is unambiguous and clear, this Court will give effect to the language as written, and will not engage in statutory construction. *Id.* at 610–11. We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning. *Abbott Ambulance v. St. Charles County Ambulance District,* 193 S.W.3d 354, 358 (Mo.App.2006); *State ex rel. Womack v. Rolf,* 173 S.W.3d 634, 638 (Mo. banc 2005). Conversely, we presume that the legislature did not insert superfluous language or idle verbiage in a statute. *Abbott Ambulance,* 193 S.W.3d at 358. Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language. *Id.*

Employee argues that the reference to section 287.170.3 in section 287.270 shows that the legislature intended that the credit given to employers of professional athletes under contract should only apply to "compensation" for temporary total disability payments.[2] We disagree. The plain and unambiguous language of section 287.270 indicates a legislative intent to create two exceptions to the initial clause, as follows: "except as provided in subsection 3 of section 287.170, **and employers of professional athletes under contract shall be entitled to full credit for wages or benefits paid to the employee after the injury ....** " (Emphasis added). If Employee's proposed statutory construction were correct, there would be no need for the clause regarding professional athletes, as the employer would already be entitled to a dollar-for-dollar credit under the exception provided in section 287.170.3. Such a construction violates the basic principles of statutory construction. Further, the legislative intent to create two exceptions is evident in the use of a comma after

---

**2.** Section 287.170.3 provides that:
The employer shall be entitled to a dollar-for-dollar credit against any benefits owed pursuant to this section in an amount equal to the amount of unemployment compensation paid to the employee and charged to the employer during the same adjudicated or agreed-upon period of temporary total disability.

"section 287.170," and the use of the conjunction "and" immediately thereafter, followed by the language addressing employers of professional athletes under contract. Any other reading would render the language of that clause superfluous.

The language of section 287.270 is plain and unambiguous, and no statutory construction is necessary. The Missouri Legislature created an exception for professional athletes under a contract, and gave the employer of such professional athletes a credit for "wages or benefits" paid to the athlete "after the injury." There is no limitation or qualification to this credit in the statute. There is no distinction made between whether the athlete is temporarily totally disabled or permanently partially disabled.

This is in contrast to the situation in *Pittsburgh Steelers Sports, Inc. v. Workers' Compensation Appeal Board*, 814 A.2d 788, 794–95 (Pa.Commw.Ct.2002), wherein the relevant workers' compensation statute draws a distinction between partial disability and total disability. Section 287.270 grants an employer of a professional athlete under contract a credit against any and all workers' compensation benefits awarded for wages or other benefits, such as medical benefits, paid after an injury occurs. The result is similar to that in *Green v. New Orleans Saints*, 781 So.2d 1199 (La.2000), wherein the Louisiana Supreme Court found that the Louisiana Legislature had created a dollar-for-dollar credit for payments made to a professional athlete under that state's workers' compensation act. Points denied.

■■■ Employee argues in his third point relied on that the Commission erred in finding that section 287.170 is constitutional. He notes that it applies only to employers of professional athletes, and contends that it violates the Equal Protection Clause of both the Missouri Constitution and the U.S. Constitution, as well as his due process rights; further he avers that it is unconstitutionally vague and arbitrarily and capriciously denies his right to "certain remedy . . . for every injury to person."

■■■ Under Article V, section of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction in all cases involving the validity of a statute. *See Glass v. First National Bank of St. Louis, N.A.*, 186 S.W.3d 766 (Mo. banc. 2005). However, the mere assertion that a statute is unconstitutional does not deprive this Court of jurisdiction. *Id.* The constitutional claim must be real and substantial, not merely colorable. *Id.* In determining whether a constitutional claim is merely colorable, or real and substantial, we make a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement. *Hertz Corporation v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 548 (Mo.App.2006). If our initial inquiry reveals that a claim is so legally and factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable. *Id.*

■■■ Our initial inquiry reveals that Employee's claims are not real and substantial, are plainly without merit, and are merely colorable. Accordingly we have jurisdiction to review them. We note that similar statutes in other jurisdictions have been challenged before on similar bases. *See Lyons v. Workers' Compensation Appeal Board*, 803 A.2d 857, 860–62 (Pa. Commw.Ct.2002); *Rudolph v. Miami Dolphins, Ltd.*, 447 So.2d 284, 291–292 (Fla. App.1984). We agree with the reasoning in *Lyons*, 803 A.2d at 860–61, that "[p]rofessional athletes are neither a suspect class nor a sensitive classification," and that the statute at issue "implicates no

fundamental or important right[,]" but rather the "right at issue is purely economic, and therefore the rational basis scrutiny applies." This is the same standard that Missouri applies to an equal protection claim. *See In re Marriage of Kohring,* 999 S.W.2d 228, 233 (Mo. banc 1999); *Missouri Highway and Transportation Commission v. Merritt,* 204 S.W.3d 278, 285 (Mo.App.2006); *Psychiatric Healthcare Corp. of Missouri v. Department of Social Services,* 100 S.W.3d 891, 905 (Mo.App.2003). Legislation that touches upon only economic interests has a presumption of rationality that can be overcome only by a clear showing of irrationality and arbitrariness. *Kohring,* 999 S.W.2d at 233. There is a rational basis for the legislature's exclusion of professional athletes. As the appellate court in *Rudolph,* 447 So.2d at 291–92, held, the professional athlete exclusion is not wholly arbitrary. Professional athletes incur serious injuries on regular, frequent, and repetitive basis. *Id.* They "make a conscious decision to use their skills in an occupation involving a high risk of frequent, repetitive, and serious injury." *Id.* It concluded that it could not say that "the legislature's exclusion of this voluntary, though highly dangerous, activity from the worker's compensation act fails to bear some reasonable relationship to a legitimate state purpose and is so completely arbitrary and lacking in equality of application to all persons similarly situation as to violate the cited constitutional provisions." *Id.* The appellate court in *Lyons* agreed with the analysis of the court in *Rudolph. See Lyons,* 803 A.2d at 861–62. It went on to add that:

> While other occupations are also rewarded for facing risk, professional athletes employed in the major professional sports represent a distinctive blend of risk combined with lucrative compensation. It is also worth observing that professional athletes undergo this risk in order to provide entertainment. While this Court has great respect for professional athletes, the legislature could have rationally placed a different value on those who risk bodily harm to provide entertainment from those, such as police officers and fire fighters, who risk bodily harm to protect society.
>
> Although these characteristics may apply equally to some other occupations, the fact that a classification is imperfect does not render it arbitrary.

*Id.* at 862.[3]

We agree with this reasoning. The Missouri Legislature's exclusion of professional athletes under contract has a rational basis, and is not arbitrary and capricious. There is no denial of due process, nor a denial of a remedy. The Commission awarded Employee $13,604.80 in workers' compensation benefits. It gave Employer a credit. This is not a denial of due process. Far from being unconstitutionally vague, section 287.270 is very clear, and uses plain and unambiguous language. Point denied.

The award of the Commission is affirmed.

MARY K. HOFF and NANNETTE A. BAKER, JJ., concur.

---

**3.** The statute at issue in *Lyons* made a further distinction between athletes who earned more than eight times the statewide average wage and those who earned more than eight times the statewide average wage, and the appellate court held that there was a rational basis for that further distinction. *Lyons,* 803 A.2d at 862.