**Gregory S. WINGROVE, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (ALLEGHENY ENERGY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 18, 2013.

Decided Jan. 3, 2014.

Douglas A. Williams and Sandra W. Kokal, Pittsburgh, for petitioner.

Milinda J. Bowen, Wexford, for respondent Allegheny Energy.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge and COVEY, Judge.

OPINION BY Judge LEAVITT.

Gregory S. Wingrove (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that amended the description of his work injury; affirmed the employer's change in his disability status from full to partial based on his impairment rating; and reinstated him to full disability status for a closed period of time. In so doing, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) on Claimant's three review petitions. Claimant argues that the Board erred because

his employer did not prove the degree of his loss of earning power, which was required when he returned to full disability status for a closed period of time. Alternatively, Claimant argues that his change in disability status was unconstitutional because the employer's physician used standards adopted by the American Medical Association (AMA), not legislatively ordered standards, to determine the degree of his impairment. We affirm.

On November 25, 2002, Claimant sustained an injury while working as a laborer for Allegheny Energy (Employer). On December 6, 2002, Employer issued a notice of compensation payable (NCP) describing the injury as a low back strain. Claimant continued to work until May 5, 2003, when he underwent back surgery. The back surgery worsened his back pain and rendered him totally disabled. Employer paid Claimant total disability benefits for two years.

On July 5, 2005, Employer issued a Notice of Change of Workers' Compensation Disability Status to Claimant. The notice stated that Claimant's disability status had been changed from total to partial, as of May 1, 2005, based on an impairment rating evaluation (IRE) performed by Jon B. Tucker, M.D., who found Claimant to have a whole body impairment of 11%. The change was automatic and self-executing because the IRE was requested within 60 days of the claimant's receipt of 104 weeks of compensation. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005).

Four years later, on May 18, 2009, Claimant challenged Dr. Tucker's IRE determination by filing two review petitions. The first review petition alleged that the description of injury in Employer's 2002 NCP should be amended to add mood disorder with depressive, psychotic and hy-pomanic symptomatology; a moderate to severe treatment-resistant pain disorder; and chronic, severe low back pain. The second review petition challenged Dr. Tucker's IRE because it did not take into account the above-listed psychiatric problems.

Then, in 2010, Claimant filed a third review petition in which he alleged that lumbar fusion surgery performed on March 24, 2010, rendered him "more than 50% disabled pursuant to the AMA Guidelines," entitling him to total disability benefits. WCJ Decision, 1/10/2012, Finding of Fact No. 6. The third review petition requested another amendment to the NCP to include post laminectomy syndrome and chronic L5 radiculopathy.

On January 2, 2011, the parties entered into a Supplemental Agreement. The parties agreed that Claimant became totally disabled on March 24, 2010; was entitled to temporary total disability until November 29, 2010; and "was placed back on partial [disability] benefits" as of November 30, 2010. Reproduced Record at 205a (R.R. ———). The parties also agreed that "[t]he execution of the [Supplemental Agreement] does not have any effect on any pending petitions or on subsequently filed petitions." *Id.*

At the hearing on Claimant's three review petitions, Claimant testified about his condition. He stated that the pain in his legs is such that he is only comfortable lying down. In 2004, he began psychiatric treatment because of his feelings of rage and worthlessness. His psychiatrist prescribed Cymbalta and Depakote, which helped "somewhat" but did not eliminate these feelings. R.R. 373a.

Claimant presented the testimony of Lawson Bernstein, Jr., M.D., who is board certified in psychiatry and neurology. He diagnosed Claimant with a major depres-

sive mood disorder associated with Claimant's chronic low back pain, with moderate to severe psychiatric symptomatology. He based his diagnosis on Claimant's report of auditory and visual hallucinations at night. Claimant experienced modest improvement with treatment but remained symptomatic.

Employer presented the testimony of Christine Martone, M.D., who is board certified in psychiatry. She evaluated Claimant on June 8, 2010, and found him to suffer from low level depression, which could have an unknown origin or be secondary to his back pain. She did not find Claimant to have psychotic symptomatology because he denied experiencing any auditory hallucinations. Claimant reported visual hallucinations of fog, lights and flashes while lying in bed at night, but Dr. Martone concluded they were not consistent with a psychotic process.

Employer also presented the testimony of James L. Cosgrove, M.D., who is board certified in physical medicine and rehabilitation. Dr. Cosgrove examined Claimant in 2007, 2008 and 2010. He agreed that Claimant suffered from post-laminectomy syndrome and chronic radiculopathy. He also concluded that Claimant had reached maximum medical improvement and was capable of doing light-duty work on a full-time basis.

The WCJ granted, in part, Claimant's review petition to expand the description of his work injury in the NCP. The WCJ found that Claimant suffered from chronic radiculopathy and post-laminectomy syndrome; chronic low back pain; and depression. These conditions were added to the NCP. Because the WCJ did not find the psychosis alleged by Claimant, he did not add that condition to the NCP.

However, the WCJ concluded that the expansion of Claimant's work injuries did not negate the validity of Dr. Tucker's

2005 IRE. Claimant did not challenge Dr. Tucker's IRE within 60 days of Employer's July 5, 2005, Notice of Change in Disability Status; he waited over four years. Further, the Supplemental Agreement did not render the 2005 IRE a nullity because it reinstated total disability benefits on a temporary basis for a closed period of time. Accordingly, it was Claimant's burden to prove that the additional recognized work injuries established a whole body impairment in excess of 50%.

Finally, consistent with the Supplemental Agreement, the WCJ granted Claimant total disability benefits from March 24, 2010, through November 29, 2010, after which Claimant's status reverted to partial disability in accordance with the 2005 IRE.

Claimant appealed to the Board. Claimant argued that the WCJ erred in holding that the 2012 amendments to the NCP did not render Dr. Tucker's 2005 IRE invalid. Claimant also argued that the WCJ erred in concluding that the Supplemental Agreement did not require Employer to prove that as of November 30, 2010, Claimant was able to do some work in order to effect his return to partial disability.

The Board affirmed the WCJ. It explained that had Claimant appealed within 60 days of the Notice of Change in Disability Status, Employer would have had to produce evidence to support Dr. Tucker's impairment rating of 11%. Because Claimant waited over four years to challenge the IRE, it was his burden to prove that the additional injuries in the NCP rendered him more than 50% impaired. The Board also held that the Supplemental Agreement did not negate the 2005 IRE. It explained that the Supplemental Agreement returned Claimant to a partial disability status on November 30, 2010, and expressly stated that the agreement did

not affect Claimant's pending review petitions.

Claimant petitioned for this Court's review. On appeal, he raises two issues.[1] First, Claimant contends that the Board erred because once Claimant became totally disabled on March 26, 2010, it became Employer's burden to prove that he was partially disabled before it could change his disability status. Second, Claimant argues that the Workers' Compensation Act[2] violates the Pennsylvania Constitution.[3]

We begin with Section 306(a.2) of the Act, which authorizes a change in a claimant's disability status from total to partial where he is found to have a full body impairment of less than 50%. This change in status does not affect the claimant's weekly benefit amount, but it does limit his collection of disability compensation to 500 weeks. Section 306(a.2) states as follows:

(1) When an employe has received total disability compensation pursuant to clause (a) [the schedule of compensation for total disability] for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, *pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."*

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medi-

---

**1.** Our scope of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser),* 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988). Further, the capricious disregard standard of review is an appropriate component of appellate consideration in any case where the question is properly brought before the Court. *Sun Home Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi),* 815 A.2d 1156, 1159 n. 3 (Pa.Cmwlth.2003).

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

**3.** Employer argues that Claimant waived this issue because it was not raised before the WCJ or the Board. However, "[q]uestions involving the validity of a statute" may be raised to this Court even if not raised before the administrative agency. Pa.R.A.P. 1551. *See also* Section 703 of the Administrative Agency Law, 2 Pa.C.S. § 703 (stating "[a] party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.").

cal Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b) [the schedule of compensation for partial disability]: Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2), the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the five hundred-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, *That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition* of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1)-(5), added by the Act of June 24, 1996, P.L. 350 (emphasis added).

In *Barrett v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 987 A.2d 1280 (Pa.Cmwlth.2010), this Court explained that if a claimant appeals the change in total benefit status within 60 days of receipt of notice, he may challenge the IRE on its merits. After 60 days, the IRE is beyond challenge. However, the claimant may obtain a new impairment evaluation. If that evaluation shows an impairment rating of 50% or greater, then the claimant may "file a petition to change his disability status back to total." *Id.* at 1288.

■ Claimant argues that the Supplemental Agreement proved he was at least 50% disabled following surgery in March 24, 2010. He argues that although the Supplemental Agreement placed him back on partial benefits as of November 30, 2010, this was based upon the NCP issued in 2002. Whether his psychiatric condition was also work-related was a matter in litigation before the WCJ. Claimant argues that once he established a work-related depression, Employer was required to prove he was less than 50% disabled in order to change his status.

■ Employer counters that the 2005 IRE determination remained binding notwithstanding the Supplemental Agreement. Claimant succeeded in expanding the NCP to include new injuries, but he waited over seven years after Employer issued the NCP in 2002 to challenge its listed injuries. In any case, the 2012

amendments to Claimant's NCP do not negate the validity of the 2005 IRE. Rather, the addition of the new work injuries to Claimant's NCP improved Claimant's ability to prove that his whole body impairment from his work injuries was at least 50%. Finally, Employer argues that the Supplemental Agreement is irrelevant because the parties agreed that it would not have any effect on the pending review petitions.[4]

The 2012 amendment to the NCP did not render Dr. Tucker's 2005 IRE determination invalid. Once 60 days passed, it became fixed and beyond challenge. *Barrett*, 987 A.2d at 1288. Thus, the burden shifted to Claimant to prove that the addition of depression to the NCP rendered him at least 50% impaired. Section 306(a.2)(4) of the Act allows a change in disability status but only where "there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty percentum impairment...." 77 P.S. § 511.2(4). Claimant did not do this and, thus, has not met his burden.[5] We reject Claimant's claim of error.

■ Next, Claimant challenges the constitutionality of Section 306(a.2) of the Act. Section 306(a.2) requires an IRE to be conducted in accordance with the "most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'" 77 P.S. § 511.2(1). Claimant asserts that subsequent editions provide different standards for evaluating impairment. Accordingly, "in some circumstances, a claimant who would have been considered to be more than 50% disabled under the most recent edition of the AMAs in 1996, might be less than 50% disabled under the most recent edition today." Claimant's Brief at 18. Alternatively, "a different claimant with a different type of injury, who was less than 50% disabled in 1996, might be considered to be more than 50% under the most recent edition today." *Id.* Claimant argues that the legislature has improperly ceded its exclusive power to make laws to the American Medical Association.

■ "Legislative enactments enjoy a strong presumption that they do not violate the Constitution." *MCT Transportation, Inc. v. Philadelphia Parking Authority*, 60 A.3d 899, 904 (Pa.Cmwlth.2013). The party challenging a statute's constitutionality has a "very heavy burden" in overcoming the presumption. *Id.* The party must show that the statute "clearly,

---

4. In his argument, Claimant confuses the concepts of disability and impairment. Disability is synonymous with a loss of earning power, *i.e.*, the extent to which the work injury affects the claimant's ability to work. *Scott v. Workers' Compensation Appeal Board (Jeanes Hospital)*, 732 A.2d 29, 32 n. 3 (Pa.Cmwlth. 1999). Employer agreed that Claimant was not able to work for a closed period of time following his back surgery, and, thus, recognized in the Supplemental Agreement that Claimant was temporarily totally disabled. A claimant's degree of impairment bears no relation to his ability to work. *Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926 A.2d 1236, 1240 (Pa. Cmwlth.2007). Therefore, although the Supplemental Agreement is evidence that Claim-

ant "was at least 50% disabled following surgery," it did not alter his impairment rating of 11%. Claimant had to undergo another IRE in order to prove an impairment of 50% or greater.

5. Claimant is not left without a remedy. He may challenge his partial disability status "at any time during the 500 weeks of partial disability if [he] obtains an impairment rating of at least 50 percent using the AMA Guides." *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120, 129 n. 14 (Pa.Cmwlth.2011), *petition for allowance of appeal denied*, 615 Pa. 781, 42 A.3d 295 (2012).

palpably, and plainly violates the Constitution." *Id.* (emphasis omitted).

■ Claimant has not developed his constitutional argument. Although he asserts that different editions of the AMA Impairment Guidelines may change a claimant's impairment evaluation, he does not assert that any of these changes would have affected his 2005 IRE. It is true that the legislature may not delegate the power to make law to a private entity. *Chartiers Valley Joint Schools v. County Board of School Directors of Allegheny County,* 418 Pa. 520, 529, 211 A.2d 487, 492 (1965). Notably, however, the phrase "most recent edition" lends itself to more than one interpretation. For example, in *McCabe v. North Dakota Workers Compensation Bureau,* 567 N.W.2d 201 (N.D.1997), the Supreme Court of North Dakota construed a nearly identical provision in its state workers' compensation statute to signify the "most recent edition" in existence when the provision was enacted. In *Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Co.),* 11 A.3d 569 (Pa.Cmwlth.2010), this Court construed "most recent edition" to signify the edition in effect when the IRE is conducted. In any case, the impairment evaluation is determined by a physician, not by a textbook. In *Madrid v. St. Joseph Hospital,* 122 N.M. 524, 928 P.2d 250 (1996), the New Mexico Supreme Court rejected a constitutional challenge to the statute's use of "most recent edition" because to do so could lead to less accurate evaluations of impairment that, ultimately, calls for medical expertise.

Claimant addresses none of these issues. His constitutional argument is conclusory at best, and, thus, he has not established a plain and palpable constitutional violation. *MCT Transportation,* 60 A.3d at 904. Accordingly, we reject his claim that Section 306(a.2) of the Act is unconstitutional.

For these reasons, we affirm the Board's order.

### ORDER

AND NOW, this 3rd day of January, 2014, the order of the Workers' Compensation Appeal Board, dated June 11, 2013, is hereby AFFIRMED.