# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Henry Mazuruk, : 
          Petitioner : 
 : No. 1216 C.D. 2015
     v. : 
 : Submitted: February 5, 2016
Workers' Compensation Appeal : 
Board (Gillin and Sons Contracting, : 
Inc.), : 
          Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 26, 2016


          Henry Mazuruk (Claimant) petitions for review from the June 15, 2015 order of the Worker's Compensation Appeal Board (Board), which affirmed a Workers' Compensation Judge's (WCJ) decision granting Gillin & Sons Contracting, Inc.'s (Employer) petition to modify Claimant's compensation benefits from "temporary total" to "temporary partial" based on an impairment rating of 24% performed pursuant to section 306(a.2) of the Workers' Compensation Act (Act).[1]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §511.2, added by the Act of June 24, 1996, P.L. 350.  In *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406, 416 (Pa. Cmwlth. 2015) (en banc), we held that section 306(a.2) of the Act was an unconstitutional delegation of legislative authority because the General Assembly "proactively approved versions of the AMA *Guides* beyond the Fourth Edition without review."  (Emphasis in
**(Footnote continued on next page…)**

## Facts and Procedural History

On December 10, 2007, Claimant sustained a work-related injury when he fell from a ladder during the course of his employment. Employer issued a notice of compensation payable (NCP), accepting liability for his injuries consisting of a non-displaced fracture of the eleventh and twelfth ribs and awarding compensation benefits at a rate of $598.61 per week. On or about June 13, 2008, Employer filed a termination petition, alleging that Claimant had fully recovered from his work injury. On or about June 23, 2008, Claimant filed a review petition to amend the NCP to correct the description of injury to include a back injury, cervical spine injury with radiculopathy, lumbar radiculopathy, and left shoulder injury. By order dated May 22, 2009, a WCJ denied Employer's termination petition concluding that Employer failed to meet its burden to prove that Claimant had fully recovered from his work-related injuries, granted Claimant's review petition, and modified the NCP to include injuries to "Claimant's neck, left shoulder, upper back, lower back, including, specifically, compression trauma to the thoracic and lumbar vertebrae, including an L4 vertebral fracture, lumbar radiculopathy at L5, lumbar sprain, cervical radiculopathy at C7-8 and disc herniations at C3 to C7, left shoulder sprain and posttraumatic myofascitis." (Reproduced Record (R.R.) at 125a.)

Employer subsequently filed a request for designation of a physician to perform an impairment rating evaluation (IRE) and Dr. Lance Yarus was designated to perform the IRE. Dr. Yarus performed the IRE and determined that Claimant had an impairment rating of 24%. On May 11, 2012, Employer filed a petition to modify

_____
**(continued…)**

original). On March 22, 2016, the Pennsylvania Supreme Court granted appeal to review. *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 133 A.3d 733 (Pa. 2016).

Claimant's compensation benefits, requesting that Claimant's benefits be modified to "temporary partial" based on Dr. Yarus's impairment rating. Claimant filed an answer denying the material allegations of Employer's petition. (R.R. at 3a-4a, 94a-96a.)

In support of its petition to modify compensation benefits, Employer submitted the deposition testimony of Dr. Yarus, a board certified orthopedic surgeon with certifications in pain management, disability, impairment evaluation, and forensic examination. Dr. Yarus testified that he is designated by the Pennsylvania Bureau of Workers' Compensation (Bureau) to perform IREs under the Sixth Edition of the American Medical Association Guides to the Evaluation of Permanent Injuries (AMA Guides) and that he has met the Pennsylvania Department of Labor and Industry's certification standards to perform IREs because he took a Bureau-approved training course. Dr. Yarus noted that a revised version to the Sixth Edition of the AMA Guides exists; however, he stated that the training course he took was taught by the author of the first version of the Sixth Edition of the AMA Guides. (R.R. at 62a-63a.)

Dr. Yarus confirmed that he performed an IRE of Claimant on March 19, 2012, and testified that he reviewed Claimant's medical records, conducted a physical examination, and generated a report containing the results. Dr. Yarus further testified that his report specified that the compensable injury involved the cervical and lumbar spine, as well as rib fractures, and explained the method for ascertaining an individual's impairment rating:

> [I]mpairment rating is for the diagnoses that were pertaining to an underlying process, that is, the injury itself. When that injury occurs, the diagnosis will be consistent with whatever part of the body the actual injury occurred. Once you have that, you have to determine what part of that

3

injury is still present and accounted for. And once you have a diagnosis, that drives the rest of the process, in this edition particularly, of how you would modify it, how would you interact with whether or not testing was considered applicable or not, because in some cases it wouldn't be because it's already incorporated into the diagnosis.

Then you come up with a mathematically designed number that reflects the whole person impairment. . . . You're looking at a midline default number, and you're going to go to the right or left of that number as you move along the process of determining what's germane to the injury and what's still present . . . .

(R.R. at 66a.)

Dr. Yarus testified that, after performing an IRE, the first determination that must be made is whether the individual has reached maximum medical improvement (MMI) and, pursuant to the Sixth Edition of the AMA Guides, MMI is defined as a point in time when the injured individual has reached a status where additional treatment will not improve his or her condition beyond the current state. He clarified that an individual may continue to exhibit symptoms and treatment for those symptoms may be available; however, the underlying impairment itself does not change. Dr. Yarus further testified that he believed Claimant had reached MMI when he saw him and concluded that, within the confines of the Sixth Edition of the AMA Guides, Claimant had a total impairment rating of 24%. He explained that:

I start out with the cervical spine. We come up with a diagnosis, which is the intervertebral disc herniations or documented Aomsi at a single or multiple level, medically documented findings, with or without surgery, with documented radiculopathy at the clinically appropriate level present at the time of the exam. It basically says that he had a disc problem, and we know that there was at C6, and the radiculopathy came along with that. . . .

4

The percentage of impairment for the cervical spine is 12 percent. Same thing for lumbar spine going through that whole process. . . .

We came up with 13 percent, because again, starting at 12, moving to the right we're at 13. We talked about the fracture at L4 not being ratable. They were already considered in the diagnoses. The other thing that was part of the information is the rib fractured [sic]. They were healed.

And again, when you're rating, you can't rate just because somebody had something in the past. It has to be something that's discernible at the time of the exam and something that's still present as far as the degree of impairment that the person exhibits based on the history of injury.

So it's not that we discounted it. It's just not ratable because there are not affects from that particular part of the impairments and injuries that occurred. One other thing is that when we separate out – if you look at the items that I listed, the radiculopathy, we don't rate that separately. So there's no peripheral nerve involvement that's separately ratable. You include that in the diagnosis. It's already accepted, and you can't separate it out according to the rules of the guides.

So talking that all into consideration, I used the appendix chart as I said, and I added the 13 percent and the 12 percent by use of the table, and it comes out to 24.[2]

(R.R. at 67a-68a.)

Dr. Yarus stated that his impairment rating takes into account everything that is ratable and testified that Claimant had cervical radiculopathy at C6-C7 notwithstanding that the NCP was modified to indicate cervical radiculopathy at C8.

---

[2] Dr. Yarus explained that, when making an impairment rating based on the table contained in the Sixth Edition of the AMA Guides, the numerical value representing an individual's total impairment rating is reduced by one so an impairment rating may never exceed 100. (R.R. at 68a.)

5

He explained that the diagnosis of cervical radiculopathy at C6-C7 was based on an MRI, associated with a broad herniation at that level, and different than radiculopathy at C7-C8. Dr. Yarus testified that he accepted the description of the compensable injury included in the records he reviewed but explained that:

> What transpired before or what's on an MRI or whatever is the case for one particular aspect of the exam is not my obligation to include other than what I see on the exam. It's not an IME. This is a process where I decide what the actual finding of impairment is at the time of exam.

(R.R. at 71a.)

Dr. Yarus stated that he did not disagree with the WCJ's factual findings that Claimant suffered disc herniations at C3-C7, that those conditions are permanent and not reversible, and that those conditions do not regenerate over time. However, he explained that his impairment rating is based on what impairment was clinically manifesting at the time of examination and testified that the AMA Guides do not authorize a treating physician to rate for past or future impairment. Rather, according to Dr. Yarus, a rating may only be based on what an individual actually presents at the time of examination. Similarly, Dr. Yarus testified that an MRI had previously been performed on Claimant which did not indicate a disc herniation; but, he incorporated a disc herniation into his impairment rating because Claimant exhibited clinical findings at the time of his examination. (R.R. at 71a-75a.)

Dr. Yarus acknowledged that the accepted injury was not a disc herniation, but rather an L4 compression fracture resulting in radiculopathy at L5; however, he stated that the fracture had nothing to do with the radiculopathy. Instead, he testified that the fracture is an old compression and explained that:

> Again, it's not my intention, nor is it my focus when I'm given the responsibility of giving an impairment rating to

6

dispute the findings of the judge. Those are the findings that encompass the work injury. The rating is a different process that has to do with what's still clinically relevant, findings that are still positive that have to do with the injury.

. . .

I'm not disputing that he didn't have a fracture. What I'm telling Her Honor is that, in fact, a radiculopathy can't be caused by this type of fracture. I'm not disputing that, there was or was not. I'm saying that the radiculopathy is coming from herniation. You can't have a radiculopathy any other way except from compression or chemical irritation or just direct inflammation. But a fracture in and of itself where there is designated doesn't cause radiculopathy.

(R.R. at 75a-76a.)

Dr. Yarus acknowledged that x-rays and an MRI performed on Claimant contained indications of an L4 fracture. However, he testified that the L4 fracture was not ratable because it had healed and did not produce any ratable symptoms at the time of his exam. Moreover, Dr. Yarus confirmed that there were other injuries that had been accepted as part of the work injury, such as a shoulder sprain and a compression injury of the thoracic spine, that he did not include in his diagnoses because they did not produce ratable symptoms. (R.R. at 76a-79a.)

After the record was closed, Claimant submitted a copy of AMA Classifications and Corrections to the Sixth Edition of the AMA Guides (revised Sixth Edition) that had been published in January 2008 with a request that the WCJ take judicial notice of the same. Employer objected to Claimant's submission and the WCJ reopened the record for oral argument on the admissibility of the revised Sixth Edition. At the hearing, Claimant argued that Dr. Yarus did not apply the most recent edition of the AMA Guides because he used the Sixth Edition of the AMA Guides instead of the revised Sixth Edition. Employer responded that the revised Sixth

7

Edition contained only minor changes to the prior version. The WCJ admitted the document over Employer's objection, refused to take judicial notice of the same, and gave the parties sixty days to raise an objection to the document's authenticity, which neither party did. (R.R. at 49a-59a.)

By order dated March 26, 2014, the WCJ granted Employer's petition and modified Claimant's compensation benefits from "temporary total" to "temporary partial" as of March 19, 2012. The WCJ found Dr. Yarus credible and noted that his testimony was uncontradicted. Additionally, the WCJ determined that Dr. Yarus used the most recent edition of the AMA Guides and based his impairment rating only on objective evidence, as required by the AMA Guides.

Claimant appealed the WCJ's determination to the Board, arguing that the IRE was invalid because Dr. Yarus failed to rate all of the adjudicated injuries and did not use the most recent version of the AMA Guides. The Board rejected his arguments and affirmed the WCJ, reasoning that an IRE considers only the impairments found at the time of examination and that Claimant failed to establish that Dr. Yarus did not use the most recent version of the AMA Guides.

On appeal,[3] Claimant argues that the IRE was not performed under the most recent edition of the AMA Guides because this Court's decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015), *appeal granted by* 133 A.3d 733 (Pa. 2016), mandates that the

---

[3] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

8

Fourth Edition is the most recent edition of the AMA Guides as a matter of law.[4] Alternatively, Claimant argues that Dr. Yarus should have performed the IRE pursuant to the revised Sixth Edition of the AMA Guides. Claimant also argues that an impairment rating must be based on a compensable injury; Dr. Yarus's findings that Claimant's injuries were old and did not cause Claimant's condition were precluded by prior adjudications; and the WCJ's decision was not based on substantial evidence.

**Discussion**

Section 306(a.2) of the Act provides, in relevant part:

> (1)  When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

---

[4] The *Protz* decision was issued on September 18, 2015, approximately two months after Claimant's petition for review was filed and approximately one month before Claimant's appellate brief was filed. We invited the parties to advise the Court whether this matter should be stayed pending the resolution of *Protz*. Although one party indicated that it would not object to a stay, the other party objected to the same. Therefore, we are proceeding to dispose of this matter.

(2)  If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a).  If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b):  Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

77 P.S. §§511.2(1)-(2).

However, in *Protz*, this Court determined that section 306(a.2) of the Act constituted "an unconstitutional delegation of legislative authority insofar as it proactively approved versions of the AMA *Guides* beyond the Fourth Edition without review."  124 A.3d at 416 (emphasis in original).  Accordingly, we remanded the matter to the WCJ to apply the Fourth Edition of the AMA Guides because we determined that was the edition that the General Assembly adopted as its methodology when it enacted section 306(a.2) of the Law.[5]  Thus, this Court's decision in *Protz* mandates that the Fourth Edition of the AMA Guides is the most recent edition of the AMA Guides as a matter of law.

Notwithstanding our decision in *Protz,* Employer argues that this Court's decision in *Wingrove v. Workers' Compensation Appeal Board (Allegheny Energy)*,

_____

[5] On March 22, 2016, the Pennsylvania Supreme Court granted appeal to review whether this Court erred in remanding the case to the WCJ with instructions to apply the Fourth Edition of the AMA Guides.  *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 133 A.3d 733 (Pa. 2016).

10

83 A.3d 270 (Pa. Cmwlth. 2014), instructs that a remand to apply the Fourth Edition of the AMA Guides in the instant matter is not warranted because Claimant failed to allege how an IRE performed pursuant to the Fourth Edition of the AMA Guides would affect his IRE and, therefore, he failed to sufficiently develop his argument.

In *Wingrove*, a claimant challenged the constitutionality of section 306(a.2) of the Act when his status was changed from total to partial disability following an IRE performed pursuant to the Sixth Edition of the AMA Guides. Specifically, he alleged that the legislature improperly ceded its law-making power to the AMA and argued that subsequent editions of the AMA Guides provide different standards for evaluating impairment such that a claimant who may have previously qualified for total disability under the most recent edition of the AMA Guides may not qualify for total disability under a subsequent edition. We rejected the claimant's constitutional challenge, noting that a legislative enactment enjoys a strong presumption that it does not violate the Constitution and stating that the party challenging a statute's constitutionality has a "very heavy burden" in overcoming the presumption; specifically, the challenger must show that the statute "clearly, palpably, and plainly" violates the Constitution. *Id.* at 276-77. Accordingly, we determined that the claimant failed to sufficiently develop his constitutional argument because he failed to allege how an alternative version of the AMA Guides would have affected his IRE. Moreover, we reasoned that the claimant did not establish a plain and palpable constitutional violation because his argument was conclusory and he addressed none of the pertinent statutory interpretation issues.

Employer argues that *Wingrove* instructs that a remand is not warranted in the instant matter because Claimant failed to allege how his IRE would have been

11

affected had it been performed pursuant to the Fourth Edition of the AMA Guides. We disagree.

In *Wingrove*, our holding was predicated on the nature of the claimant's challenge; the claimant failed to overcome his very heavy burden to establish a plain and palpable constitutional violation. However, the relevant constitutional issue has been resolved. *See Protz*, 124 A.3d 406. Therefore, here, Claimant need not overcome a "very heavy burden" and establish a plain and palpable constitutional violation because he has not asserted a constitutional challenge. Rather, he alleged that the IRE was invalid as a matter of law because it was not performed pursuant to the Fourth Edition of the AMA Guides based on our decision in *Protz*. As such, unlike the situation presented in *Wingrove*, it is not fatal to Claimant's argument that he failed to allege how an IRE performed pursuant to the Fourth Edition of the AMA Guides would affect his impairment rating. Instead, Claimant identified an error of law that was committed before the lower tribunal and a remand is warranted to correct that error.[6] *See Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Co.)*, 11 A.3d 569, 577 (Pa. Cmwlth. 2010).

---

[6] The record indicates that Employer timely requested that an IRE be performed, i.e., within sixty days after Claimant received 104 weeks of total disability. 77 P.S. §511.2(1). Presuming the IRE physician calculated an impairment rating of less than 50% under the Fourth Edition of the AMA Guides, Employer would be entitled to self-executing relief in the nature of Claimant's disability status being changed to partial disability. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 888 A.2d 758, 766-67 (Pa. 2005). If we were to reverse the Board's order and find that the impairment rating calculated was invalid because Dr. Yarus did not use the Fourth Edition of the AMA Guides, we would deprive Employer of its entitlement under the Act to obtain self-executing relief. Any subsequent IRE would be made beyond sixty days of Claimant's receipt of 104 weeks of total disability. Therefore, Employer could only change Claimant's disability status from total to partial through the traditional administrative process. *Id.* Here, Employer complied with the statutory time requirements for requesting an IRE and should not be penalized for circumstances beyond its control, i.e., this Court's decision in *Protz* holding that section 306(a.2) of the Act "constituted an unconstitutional delegation of legislative authority **(Footnote continued on next page…)**

12

Accordingly, the Board's order is vacated. The matter is remanded to the Board with specific instructions to remand to the WCJ to permit Employer to have Claimant submit to a new IRE performed pursuant to the Fourth Edition of the AMA Guides.[7]

_____
PATRICIA A. McCULLOUGH, Judge

**(continued…)**

insofar as it proactively approved versions of the AMA *Guides* beyond the Fourth edition without review." 124 A.3d at 416 (emphasis in original).

[7] Based on the foregoing determination, we need not address Claimant's remaining arguments regarding whether an impairment rating must be based on a compensable injury, whether Dr. Yarus's findings that Claimant's injuries were old and did not cause Claimant's condition were precluded by prior adjudications, and whether the WCJ's decision was based on substantial evidence.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Henry Mazuruk,                                       :
                    Petitioner                       :
                                                     :   No. 1216 C.D. 2015
            v.                                       :
                                                     :
Workers' Compensation  Appeal                        :
Board (Gillin and Sons Contracting,                  :
Inc.),                                               :
                    Respondent                       :

## *ORDER*

AND NOW, this 26th day of August, 2016, the June 15, 2015 order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is vacated. The matter is remanded to the Board with specific instructions to further remand to the Workers' Compensation Judge to permit Gillin and Sons Contracting, Inc. to have Henry Mazuruk submit to a new impairment rating evaluation performed pursuant to the Fourth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge