# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Potts,                          :
                          Petitioner     :
                                        :
            v.                          :
                                        :
Workers' Compensation                   :
Appeal Board (Elwyn, Inc.),             :   No. 615 C.D. 2016
                          Respondent     :   Submitted: August 26, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: January 19, 2017


Kenneth Potts (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) March 29, 2016 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's Penalty Petition. Claimant presents two issues for this Court's review: (1) whether the Board erred by holding that the September 8, 2004 Notice of Change in Disability Status was the controlling document; and (2) whether the Board erred in failing to apply *Protz v. Workers' Compensation Appeal Board (Derry Area School District),* 124 A.3d 406 (Pa. Cmwlth. 2015), *appeal granted by* 133 A.3d 733 (Pa. 2016). After review, we affirm.

On April 18 and 22, 2002, Claimant suffered work-related injuries while employed by Elwyn, Inc. (Employer). By February 10, 2004 decision, WCJ John Liebau determined that Claimant's work-related injuries included a fracture of the left index finger, left carpal tunnel syndrome, reflex sympathetic dystrophy and cervical

radiculopathy. WCJ Liebau also found that these injuries rendered Claimant disabled as of June 26, 2002. Claimant was awarded wage loss benefits at the rate of $373.33 per week. As of June 22, 2004, Claimant had received 104 weeks of temporary total disability benefits relative to the April 18, 2002 injuries; thus, Employer filed a Request for Designation of a Physician to Perform an Impairment Rating Evaluation (IRE) with the Bureau of Workers' Compensation.

On July 26, 2004, Claimant returned to modified-duty work for Employer. On August 10, 2004, James F. Bonner, M.D. (Dr. Bonner) performed an IRE and concluded that Claimant's whole person impairment in accordance with the Fifth Edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment" (AMA Guides) was 20%. As a result thereof, on September 8, 2004, Employer issued a Notice of Change in Disability Status because Claimant's disability status changed, based on the IRE, from total to partial effective August 10, 2004.

Claimant's modified-duty position was eliminated on March 1, 2005. On March 11, 2005, the parties executed a Supplemental Agreement providing that Claimant's disability recurred as of March 1, 2005. On November 8, 2005, Claimant underwent a left rotator cuff repair and biceps tendon tenolysis. Claimant filed a Review Petition and Employer filed a Modification Petition (collectively, Petitions). On February 8, 2007, the Petitions were withdrawn, and Claimant's injury description was expanded to include a left rotator cuff tear. On March 25, 2014, Claimant filed the Penalty Petition alleging that Employer unilaterally stopped paying temporary total disability benefits without first obtaining an IRE Decision modifying Claimant's status from total to partial disability. Employer filed an answer to the Penalty Petition denying the allegations therein. WCJ Holly San Angelo held hearings on May 6 and July 8, 2014. On March 31, 2015, WCJ San Angelo denied Claimant's

2

Penalty Petition. Claimant appealed to the Board. On March 29, 2016, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[1]

Claimant first argues that the Board erred by holding that the September 8, 2004 Notice of Change in Disability Status was the controlling document. Specifically, Claimant contends that the March 11, 2005 Supplemental Agreement controls. We disagree.

Initially, Section 306(a.2) of the WC Act (Act)[2] provides, in pertinent part:

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the [AMA Guides.]
>
> (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the [AMA Guides,] the employe shall be presumed to be totally disabled and shall continue to

---

[1] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511.2, added by Section 4 of the Act of June 24, 1996, P.L. 350. As explained herein, this Court in *Protz* declared this section "an unconstitutional delegation of legislative authority insofar as it proactively approved versions of the *AMA Guides* beyond the Fourth Edition without review." *Protz*, 124 A.3d at 416.

3

receive total disability compensation benefits under clause (a). **If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the** [AMA Guides,] **the employe shall then receive partial disability benefits under clause (b)**: Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2), the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. **An insurer or employe may, at any time prior to or during the five hundred-week period of partial disability, show that the employe's earning power has changed**.

(4) **An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum impairment** under the most recent edition of the [AMA Guides.]

(5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the [AMA Guides.]

77 P.S. § 511.2(5) (emphasis added). Section 306(b)(1) of the Act expressly provides: "[C]ompensation shall be paid during the period of such partial disability . . . but **for not more than five hundred weeks**." 77 P.S. § 512(1) (emphasis added). Moreover, our Supreme Court explained:

Impairment and disability are not interchangeable terms. . . . [I]mpairment is statutorily defined as 'an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent,' 77 P.S. § 511.2(8)(i), while disability is 'the loss of earning power attributable to the work-related injury.' *Landmark Constructors,* [*Inc. v. Workers' Comp.*

4

> *Appeal Bd. (Costello)*], 747 A.2d [747,] 854 [(Pa. 2000)].
> Impairment, therefore, deals with the physical aspects of the
> claimant's injury without regard to the impact on the
> claimant's earning power occasioned by the injury.
> Disability concerns loss of earning power without focusing
> on the physical limitations responsible for the loss of
> earning potential.  What constitutes proof of impairment
> would necessarily vary greatly from evidence of disability.

*Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.),* 5 A.3d 230, 244 (Pa. 2010).

Here, the September 8, 2004 Notice of **Change in Disability Status** was based on Claimant's impairment rating of less than 50% from which he did not appeal during the five hundred-week period.  However, because Claimant was working in a modified position at that time, he did not receive his partial disability payments.  The Supplemental Agreement for **Compensation for Disability** was based on the elimination of Claimant's modified job which resulted in Claimant's disability "recurr[ing]."  Supplemental Agreement, Reproduced Record at 77a.  As a result of the Supplemental Agreement, Claimant began receiving his **partial** disability payments on March 1, 2005.

Pursuant to Section 306(a.2)(4) of the Act: "An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; **Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum impairment.**"  77 P.S. § 511.2(4) (emphasis added).  Claimant did not appeal from the change to partial disability.  Because the Notice of Change in Disability Status concerned Claimant's "physical aspect[]" of his injury, and the Supplemental Agreement concerned only Claimant's "loss of earning power," the Board properly determined that the September 8, 2004 Notice of Change in Disability Status was the controlling document. *Diehl,* 5 A.3d at 244.

Claimant also asserts that because his injury description was expanded on February 8, 2007 to include a left rotator cuff tear, and Employer did not request a

change in Claimant's disability status based thereon, Employer was not authorized to stop Claimant's disability benefits under Section 435 of the Act. We disagree.

In *Wingrove v. Workers' Compensation Appeal Board (Allegheny Energy),* 83 A.3d 270 (Pa. Cmwlth. 2014), this Court expressly held:

> [A] 2012 amendment to the [Notice of Compensation Payable (]NCP[)] did not render [a] 2005 IRE determination invalid. Once 60 days passed, it became fixed and beyond challenge. Thus, the burden shifted to [the c]laimant to prove that the addition[al injury] to the NCP rendered him at least 50% impaired. Section 306(a.2)(4) of the Act allows a change in disability status but only where 'there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty percentum impairment. . . .' 77 P.S. § 511.2(4). [The c]laimant did not do this and, thus, has not met his burden.

*Wingrove,* 83 A.3d at 276 (citation omitted); *see also Duffey v. Workers' Comp. Appeal Bd. (Trola-Dyne, Inc.),* 119 A.3d 445, 453-54 (Pa. Cmwlth. 2015), *petition for allowance of appeal granted,* 131 A.3d 480 (Pa. 2016) ("[A]n IRE that considers a claimant's work injury, **as it is defined and exists at the time the IRE is performed**, is valid **notwithstanding an after-the-fact expansion** of the scope of a claimant's work-related injury." (Emphasis added)).

In the instant case, Claimant's IRE determination became "fixed and beyond challenge" after 60 days passed. *Wingrove,* 83 A.3d at 276. "Thus, the burden shifted to Claimant to prove that the addition[al injury] rendered him at least 50% impaired." *Id.* Consequently, since it was not Employer's burden to request a new IRE based on the amended injury description, Employer did not violate the Act by stopping Claimant's disability benefits.

Claimant next contends that the Board erred in failing to apply *Protz* because Dr. Bonner used the Fifth Edition of the AMA Guides and the *Protz* Court ruled that the Fifth Edition of the AMA Guides was constitutionally invalid.

6

Claimant cites *Ruse v. Workers' Compensation Appeal Board (Valley Medical Facilities Sewickley)* (Pa. Cmwlth. No. 952 C.D. 2014, filed January 13, 2016) to support his position.[3]

We recognize that in *Protz,* this *en banc* Court held: "[W]e declare Section 306(a.2) of the Act, 77 P.S. § 511.2, an unconstitutional delegation of legislative authority insofar as it proactively approved versions of the AMA *Guides* beyond the Fourth Edition without review." *Protz,* 124 A.3d at 416. Further, we acknowledge that in *Ruse,* this Court remanded the matter to the Board for "a new IRE [to] be performed in accordance with the methodology contained in the Fourth Edition of the AMA Guides" based on the *Protz* Court's holding. *Ruse,* slip op. at 9. However, in *Ruse*, the claimant filed a timely Petition to Review Compensation Benefits (Review Petition) challenging his IRE, as well as a Petition for Remand/Rehearing (Remand Petition) based on a subsequent IRE. Thus, Claimant's IRE was properly before the Court in *Ruse.*

**Here**, **Claimant did not** file a Review Petition to **contest his IRE**, nor did he obtain a subsequent IRE or file a Remand Petition based thereon. **Thus**, **Claimant's IRE is not before the Court**. Rather, Claimant filed a **Penalty Petition** when his disability payments ceased. Accordingly, the only issue before this Court is

---

[3] Claimant also asserts that *Frazier v. Workers' Compensation Appeal Board (Bayada Nurses, Inc.),* 52 A.3d 241 (Pa. 2012), *Bible v. Department of Labor and Industry,* 696 A.2d 1149 (Pa. 1997), and *Pittsburgh Steelers Sports, Inc. v. Workers' Compensation Appeal Board (Williams),* 814 A.2d 788 (Pa. Cmwlth. 2002), require that *Protz* be applied in this case. However, *Frazier* does not address the retroactivity of an unconstitutional statutory provision, *Bible* discussed the retroactivity of a statute which contains a specific legislative direction that it be applied retroactively, and *Williams,* addressed post Act 44 enactment injuries and the Court held: "[Act 44's] provision relating to the compensation of professional athletes is controlling. The law in effect at the time of [the] injury determines the method of calculating benefits, and by extension, the calculation of any credits against those benefits." *Williams,* 814 A.2d at 795. Accordingly, *Frazier, Bible* and *Williams* are inapposite.

whether the Board erred in affirming the WCJ's decision **denying Claimant's Penalty Petition**.

> 'The assessment of penalties, and the amount of penalties imposed are matters within the WCJ's discretion.' *Gumm v. Workers' Comp. Appeal Bd. (Steel),* 942 A.2d 222, 232 (Pa. Cmwlth. 2008). 'However, **'a violation of the Act or its regulations must appear in the record for a penalty to be appropriate.'** ' *Id.* (emphasis added) (quoting *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n),* 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000)). 'No penalty may be imposed under [Section 435[FN]5] [of the Act] absent proof of a violation of the Act or the rules of the department or board.' *Id.* (quoting *Spangler v. Workmen's Comp. Appeal Bd. (Ford),* . . . 602 A.2d 446, 448 ([Pa. Cmwlth.] 1992)). 'Further, a claimant who files a penalty petition bears the burden of proving a violation of the Act occurred. If the claimant meets his or her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act.' *Id.* (citation omitted).
>
> [FN]5 Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991.

*Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.),* 134 A.3d 518, 525 (Pa. Cmwlth. 2016).

Claimant contends that Employer violated the Act because Employer "unilaterally stopped paying Claimant's [WC] benefits without first obtaining an IRE [d]ecision modifying [] Claimant's status from total to partial disability." Claimant Penalty Pet. at 1. As explained above, Employer was not required to obtain an IRE decision modifying Claimant's status from total to partial disability because: (1) the Supplemental Agreement did not change Claimant's status from partial to total disability as a result of his additional injury; and (2) the 2004 IRE became fixed and beyond challenge after 60 days passed. Employer stopped Claimant's benefits on or

about March 23, 2014,[4] 500 weeks from the date Claimant's partial disability payments became payable (August 10, 2004). "Section 306(b) of the Act, 77 P.S. § 512, . . . provides that compensation for partial disability is payable for a period **not to exceed 500 weeks**." *Cozzone v. Workers' Comp. Appeal Bd. (PA Mun./E. Goshen Twp.),* 41 A.3d 105, 109 (Pa. 2012) (emphasis added). Thus, "Employer was no longer under any obligation to pay Claimant wage loss benefits related to his work-related injury, and, therefore, Employer did not violate the Act by unilaterally ceasing payment of Claimant's . . . disability benefits." *Id.* at 114.

Claimant's contention that because *Protz* subsequently deemed Claimant's 2004 IRE constitutionally invalid does not affect the issue before the Court, i.e., whether Claimant's Penalty Petition was properly denied. At the time Employer stopped payment of Claimant's disability benefits, Claimant's IRE was valid; thus, ceasing Claimant's disability benefits based thereon was not a violation of the Act. Indeed, Employer discontinued making payments on March 23, 2014, and *Protz* was not decided until September 18, 2015. As Employer did not violate the Act **at the time it stopped making Claimant's payments**, the Board properly affirmed the WCJ's decision denying Claimant's Penalty Petition.[5]

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[4] The record is absent of the exact date Employer stopped Claimant's payments; however, March 23, 2014 is the date Claimant listed as when the alleged violation occurred. *See* Claimant Penalty Pet. at 1.

[5] The Dissent misconstrues this holding as a declaration that *Protz* does not apply retroactively. This Court makes no such ruling. Rather, we hold that the *Protz* issue is not properly before the Court given the facts of this case.

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Potts,                 :
               Petitioner       :
                            :
          v.                 :
                            :
Workers' Compensation     :
Appeal Board (Elwyn, Inc.),    :    No. 615 C.D. 2016
             Respondent    :

## O R D E R

AND NOW, this 19th day of January, 2017, the Workers' Compensation Appeal Board's March 29, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Potts, :
                Petitioner :
  :
          v. :
  :
Workers' Compensation Appeal :
Board (Elwyn, Inc.), : No. 615 C.D. 2016
             Respondent : Submitted: August 26, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE COSGROVE      FILED: January 19, 2017


Although I agree with the majority opinion in all other aspects, I must dissent from its holding that our decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015), *appeal granted by* 133 A.3d 733 (Pa. 2016) is not to be applied retroactively. "[A]t common law, a decision announcing a new principle of law is normally retroactive." *Blackwell v. Com., State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991). This rule is tempered by prudential considerations which examine three considerations: (1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule. *Id.,* citing *Desist v. United States*, 394 U.S. 244 (1969).

In *Protz*, this Court found Section 306(a.2) of the Workers' Compensation Act [1] violated "Article II, Section 1 of the Pennsylvania Constitution" in that it constituted "an unconstitutional delegation of legislative authority" by allowing disability to be determined according to standards created by the American Medical Association (AMA) but never approved by the General Assembly. Applying the three pronged analysis noted above, there is nothing in this record to indicate that retroactive application of *Protz* would do anything other than advance the interests of justice. Denying that application in the present case works a mischief with which I cannot agree. Accordingly, I must respectfully dissent. [2]

_____
JOSEPH M. COSGROVE, Judge

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.2, added by the Act of June 24, 1996, P.L. 350.

[2] In response to the present dissent, the Majority suggests that the issue of whether *Protz* is to be applied retroactively is not addressed in its opinion. However, despite its efforts, the Majority still permits a disavowed disability determination to govern resolution of this case. Since this cannot survive constitutional scrutiny, this dissent must remain.